Kraut v. Crawford.

## KRAUT v. CRAWFORD.

1. **Riparian owner:** FRACTIONAL TRACT: MEANDER LINE. The patentee of a fractional tract of land which is situated upon a bank of a navigable river, and is shown by the plats of the public lands to extend thereto, is entitled to all the land adjacent to his grant, to the water's edge. The meander line is not a line of boundary.

2. —— ACCRETIONS. The accretion or newly formed ground between the meander line and the water's edge on a navigable river, belong to the riparian owner.

*Appeal from Clayton District Court.*

WEDNESDAY, JUNE 14.

RIPARIAN OWNERSHIP UPON THE MISSISSIPPI RIVER; CONSTRUCTION OF GRANTS BY THE UNITED STATES UPON WATER-COURSES; ALLUVIAL FORMATIONS BELONG TO RIPARIAN OWNER, AND CANNOT, SUBSEQUENTLY, BE GRANTED TO THE GOVERNMENT, OR CLAIMED AS "SWAMP LAND;" TRESPASS QUARE CLAUSUM FREGIT. —— The cause was submitted to the court without a jury. The court made no finding of facts, but rendered judgment generally for the defendant for costs.

The plaintiff's motion for a new trial, on the ground that the judgment was contrary to the evidence, being overruled, and proper exceptions taken thereto, he appeals.

The other necessary facts will be found in the opinion.

*Murdock & Hunt* for the appellant.

*Noble & Beckwith* for the appellee.

DILLON, J.—The District Court not having made any finding of facts, the record presents but one question which is properly the subject of review in this court. That question is, was the judgment of the court below against the weight of evidence, and so against it as to require us to reverse it and order a new trial? In other words, we are called upon to decide whether the court erred in refusing to sustain the plaintiff's motion for a new trial; this motion being based alone upon the ground that the judgment appealed from was contrary to the evidence.

The *locus in quo*, to which both parties claim adverse titles, is in fractional sec. 17, T. 93, R. 2. The evidence, all of which is before us, shows that, on the 25th day of January, A. D. 1855, the plaintiff obtained a deed for the above fractional section, or a portion thereof, containing, according to that deed, $2\frac{67}{100}$ acres, from the county judge of Clayton county, it being sold and conveyed to the plaintiff as part of "the swamp and overflowed lands situate in and belonging to said county."

If the land in question was *swamp land*, and, as such, had passed to the county, it is clear that this deed vested the plaintiff with the title which the county previously had, and he should have recovered.

But the defendant denies that it was swamp land; that the county ever had any title to it, or ever conveyed, or could convey, title to the plaintiff; and he furthermore claims that he, and not the plaintiff, is the owner of the *locus in quo*.

It was shown on the trial, that the defendant owns the E. fractional ½ of the S. W. ¼, sec. 17, T. 93, R. 2, he claiming and using the particular tract in dispute for several years.

It is proper here to state that the case is not presented in the evidence with that degree of fullness and precision that are desirable. The plats are not clear, especially when compared with each other. What is all-important,

we have not in the record before us, the field notes of the United States survey. We are not sure that we have even a plat of that survey. Among other plats is one which may or not be the map or plat of the original survey. No explanation is given, and assuming it to be the plat, it is so marked and worn that it is possible that it may mislead us. Under these circumstances we have had to grope for the facts, and it is no fault of ours if we have not correctly apprehended them.

The defendant claims that the fractional eighty above named (E. fractional $\frac{1}{2}$, S. W. $\frac{1}{4}$, sec. 17, T. 93, R. 2), and owned by him, *embraces the locus in quo.* This eighty borders on the Mississippi river, and is made fractional by it; and is divided by the government survey into lot 3, containing 31.95 acres, and lot 4, containing 34.40 acres. The *locus in quo* is connected with, and wholly, or almost wholly, opposite lot 4, and lies between the meander line and the river. "It is a low bottom, which at high water is overflowed, but at low water is dry. Owing to a depression in the ridge, a rise of five feet from low water stage will create a current over the low ground. This low ground has been raised from twelve to eighteen inches by deposits of dirt and accretions since I first knew it." (Peck's evidence.) This overflowed land, according to McClelland's plat, which is doubtless mainly correct, now contains 8 $\frac{6}{100}$ acres, 4 $\frac{54}{100}$ acres being south of the slough, and 4 $\frac{04}{100}$ acres north of it, and with no slough or current of the river shown as running between it and the water of the main stream. Among other matters left indefinite or uncertain is the *exact locus in quo.* But the plaintiff testifies that, "there had been cut by Crawford a small quantity of wood and trees on the premises claimed by the plaintiff, *north of the slough,* and east of or in front of Crawford's land."

Taking this to be the *locus in quo,* it is not divided from Crawford's other land by any slough or channel or current

of the river, but is a low bottom, directly connecting the other land with the river, and subject to overflow in high water.

Upon the whole evidence, as it is now before us, we are of the opinion that, in selling the fractional 80 above 1. RIPARIAN named, the government intended to sell all the OWNER: fractional land to the river: whoever bought it, became a tract: meander. riparian proprietor on the river. . At the time of the survey by the United States, which might have been in a high stage of water, there was not enough land to make a full 80 or a full 40 acre tract. For it has been the settled policy of congress to survey the public lands in square figures, and to extend the subdivisions authorized by law as far as possible in square figures to the lowest denomination. *Brown's Lessee* v. *Clement*, 3 How. (U. S.), 663. And see act of congress, directing boundary lines to be extended "to the water course." Act February 11, 1805, § 2, 2 Stat. at Large, 313; Act, 1796, 1 Id., 464.

We can see no reason why the government should wish to reserve a few acres of overflowed lands, and no evidence that they did so reserve it. The case at bar bears a very striking resemblance to that of *Middleton* v. *Pritchard*, 3 Scam. (Ill.), 510, where it was decided that the riparian proprietor owned the low ground or peninsula outside of the meander line, and which very nearly corresponds in character to the tract in dispute in this case. The court placed their decision upon the ground that such proprietor owned to the center thread of the current.

In *McManus* v. *Carmichael*, 3 Iowa, 1, this court adopted a different rule as to the extent of riparian proprietorships on the Mississippi. To the decision of the present case, it is not necessary to determine which is the better or correct rule.

As we understand the testimony, the government plat of the survey referred to in the patent represented the fractional eighty, now owned by the defendant, and which, we

hold, embraces the *locus in quo*, as *bounded upon the river*
It showed no intermediate tract between that and the river.
There was no such tract reserved.   The plaintiff's theory
seems to be, that defendant is only entitled to the quantity
of land called for in the patent and shown on the plat;
that the grant is limited to the meandered line.   This is an
error.   The grantee gets all down to the river, be it more
or less.   The line is meandered chiefly to obtain the quan-
tity ; and the meander line is not a line of boundary.   As
above remarked, the government plat shows defendant's
land to abut upon and to be made fractional by the water
course ; and a grant of it by the government will at least
extend to the water so as to give the grantee, under all
circumstances, the full benefit of the river front.   *Once a
riparian proprietor, always so,* because accretions, or newly
formed ground, belong to such proprietor, *jure
gentium,* and because the government cannot after-
wards grant such accretions, or newly formed ground, to
another.   The law is wise and just.   If the action of the
river had gradually worn away the defendant's land after
the purchase from the United States, the loss would have
been his.

2. ⸺
accretions.

To compensate him for risk of loss in this manner, as
well as to preserve to him the benefits of his water front,
the law gives him (see authorities below cited) the advan-
tage of any gain by accretions or alluvial deposits.   If the
*locus in quo* was in existence when the land was surveyed
and sold by the United States, it not being reserved, and
the official plat showing the tract now owned by the
defendant *to extend to the river,* no right to or over any of
the ground could subsequently be sold by the government,
nor acquired by the plaintiff, not even though the *locus in
quo* be situated between the river and the meandered line
of the original survey.

If, on the other hand, the *locus in quo* has been gradu-

ally formed since the survey and sale, this addition or increment belongs to the defendant by virtue of the principle that ground gained by alluvion belongs to the owner of the adjoining land. (Consult on the above propositions, Coop. Just., 74; Inst., 1, 2, 28; Puff., 4, 7, 12; Bract., Book 2, ch. 2; *De Jure Maris*, ch. 6; Angell on Water Courses, §§ 53, 54, 55; 3 Kent Com., 519; *Kinge* v. *Yarborough*, 3 B. & C., 91; *New Orleans* v. *United States*, 10 Pet., 662; *Deerfield* v. *Ames*, 17 Pick., 41; 2 Public Land Opin. and Inst., 758, 850; *Ex parte Jennings*, 6 Cow., 518, note and cases. And as to riparian rights, see also *Grant, Receiver, &c.,* v. *City of Davenport, ante ; Lorman* v. *Benson,* 8 Mich., 18 [1860]; *Prosser* v. *Wapello County* and *Prosser* v. *Davis, ante,* and recent case of *Jones* v. *Soulard,* 24 How. [U. S.], 41 [1860], in which it is even held that riparian proprietors upon the Mississippi river are entitled to all accretions as far out as the middle of the stream; *Lamb* v. *Rickets,* 11 Ohio R., 311, 313.)

Finally, the points decided by the court in this case are, 1. That the plaintiff having proved no *actual possession* of the ground in controversy, could not recover on that ground. 2. The plaintiff did not establish a satisfactory *legal title,* for whether the defendant, under *McManus* v. *Carmichael, supra,* had or had not title to the *locus in quo* (assuming it to be below high water mark), we are of opinion that the government having sold the land to the defendant, referring to a plat which bounded the land by and upon the river, cannot, by any subsequent action or grant to another, cut off the defendant's right to the full benefit of his river front, or deprive him of any of the incidents of riparian proprietorships, and this although the land thus subsequently granted was afterwards newly formed or elevated above the river by alluvion, and lies outside of the meander line and between it and the present edge of the water.                                         Affirmed.