FREDERICK LOCKWOOD *vs.* THE NEW YORK & NEW HAVEN RAILROAD COMPANY.

In this state the owners of land bounded on a harbor own only to high water mark, and whatever rights such owners have of reclaiming the shore are mere franchises.

When however such reclamations are made, the reclaimed portions in general become integral parts of the owners' adjoining lands.

The principles governing the case are the same as those which prevail where the sea recedes gradually through accession of soil to the land.

Where there is a right of way to and from a harbor, such right continues over all accessions of soil which accrue between high and low water mark, whether the line of high water mark is changed by natural or artificial causes.

Where a right of way granted by a deed to a railroad company across certain land bounded upon a harbor, was described in the deed as "being in length about 22 chains, and extending from said harbor on the west to the land of N on the east, and four rods in width," with a reference to the survey of the road for a more particular description, it was held that the right of way extended across the mud flats lying between the west line of the land at high water mark and low water mark.

Petition for an injunction against the removal by the respondents of certain structures erected by the petitioner upon certain mud flats which had been reclaimed, which structures were claimed by the respondents to be an obstruction of their right of way; brought to the Superior Court in Fairfield County.

The shore land adjacent to the reclaimed flats was formerly owned by Birdsey G. Noble, who on the 13th of November, 1847, conveyed a right of way across the same to the respondents, the important part of the deed being as follows:—

"I, Birdsey G. Noble, of the city of Brooklyn, in the state of New York, for the consideration of Eighteen Hundred Dollars, received to my full satisfaction of the New York & New Haven Railroad Company, do give, grant, bargain, sell, and confirm, unto the said New York & New Haven Railroad Company, and its assigns forever, the right of way for the construction and use of said railroad, across certain land owned by me in the town of Bridgeport, in Fairfield County, and state of Connecticut, on the east side of the harbor, as the said road is located and established, the said right of way being in length about twenty-two chains; extending from the said harbor on the west to the land of William H. Noble on the east; excepting the right of the public in a street running northerly between my land and the land of said William H. Noble, and in a street running easterly from Noble's bridge, so called; said right of way being in width four rods, through

the whole length thereof, reference being had to the map and survey of said railroad made by the engineer for a more particular description."

The rights of Noble, the grantor, have become vested in the present petitioner. The petitioner claimed that the westerly line of the land through which the right of way was granted was high water mark, and that the flats between high and low water mark belonged to him except so far as the respondents had gained rights by adverse use. The respondents claimed that high water mark was not the westerly boundary of their right of way, and that under the deed they had the right to occupy the land between high and low water mark adjacent to the grantor's upland for a space of four rods in width.

Upon these facts the case was reserved for the advice of this court.

*Noble* and *Beardsley*, for the petitioner.

1. The words of the deed, " extending from said harbor on the west about twenty-two chains to the land of W. H. Noble on the east," give a definite western boundary. A harbor is that area and surface which is enclosed by the outer line of its waters at their ordinary full tide. " From the harbor" means therefore from this outer line. *Nichols* v. *Lewis*, 15 Conn., 137, 143. "About twenty-two chains" must be taken as meaning substantially that length, and may properly be taken to mean here that precise length; and measuring that distance either way will give a definite western boundary. *Davis* v. *Rainsford*, 17 Mass., 207; *Blaney* v. *Rice*, 20 Pick., 62, 64.

2. Definite points and boundaries will exclude all the territory that lies beyond them. *Jackson* v. *Hathaway*, 15 Johns., 447, 454; *Hatch* v. *Dwight*, 17 Mass., 289, 298; *Davis* v. *Rainsford*, id., 207; *Tyler* v. *Hammond*, 11 Pick., 193; *Flagg* v. *Thurston*, 13 id., 145; *Storer* v. *Freeman*, 6 Mass., 435, 439; *Nickerson* v. *Crawford*, 4 Shep., 245; 2 Hilliard Real Estate, 346; Angell on Tide Waters, 229; Angell on Highways, §§ 316, 318.

3.  Owners of upland bordering upon the sea are owners of the adjoining shore, subject only to the paramount rights of the public.  *East Haven* v. *Hemingway*, 7 Conn., 202; *Chapman* v. *Kimball*, 9 id., 41; *Nichols* v. *Lewis*, 15 id., 143.

4.  The grant of a right of way is not like a grant of a fee of land, and will not carry riparian ownership or the right to use and occupy beyond its limits.  *Perley* v. *Chandler*, 6 Mass., 454.  Nothing more passed by this grant than would have been acquired if the right of way had been taken by legal process with the same description of the land taken. Redfield on Railways, 105.

*Seeley* and *Child*, for the respondents, cited *Simons* v. *French*, 25 Conn., 346; *Church* v. *Meeker*, 34 id., 422; *Mayhew* v. *Norton*, 17 Pick., 357; *Green* v. *Chelsea*, 24 id., 71; *Peck* v. *Lockwood*, 5 Day, 22; *East Haven* v. *Hemingway*, 7 Conn., 202; *Bushnell* v. *Proprietors of Ore Bed*, 31 id., 150; *Saltonstall* v. *Proprietors of Long Wharf*, 7 Cush., 201; *Harlow* v. *Fisk*, 12 id., 302; *Doane* v. *Wilcutt*, 5 Gray, 328; *Commonwealth* v. *City of Roxbury*, 9 id., 451, 524; *Niles* v. *Patch*, 13 id., 254, 257; *Partridge* v. *Luce*, 36 Maine, 16.

SEYMOUR, J.  The question in dispute between these parties is whether the defendants' right of way for their railroad covers the ground on which certain structures were erected by the plaintiff, which structures the defendants have removed as interfering with the right of way claimed by them.

The case depends upon the construction and effect of a deed, set forth at length in the finding of facts, made by the plaintiff's grantor to the defendants; so much of the deed as is particularly applicable to the question under consideration being that part which describes the land over which the right of way is granted, as " extending from the harbor on the west to the land of William H. Noble on the east."  At the time this grant was made the defendants' road had been surveyed and located and the map of the road as thus located is referred to in the grant.  The road thus mapped continues westerly across the harbor of the same width as on the plain-

tiff's land.   The structures above mentioned are within the limits of the road as thus surveyed, but are on what at the date of the deed were flats between high and low water mark. The plaintiff has reclaimed a portion of these flats and erected the structures, claiming that the right of way granted by the deed extends only to high water mark as high water mark was at the date of the deed, and that as owner of the fee he may lawfully reclaim the flats between high and low water mark, and that he may hold and occupy these reclaimed premises unincumbered of any right of way in the defendants, except so far as the defendants have by actual occupation acquired a right by possession and user.

The plaintiff is undoubtedly right in the claim that in Connecticut the owners of land bounded on a harbor own only to high water mark, and that whatever rights such owners have of reclaiming the shore are mere franchises.   When however such reclamations are made the reclaimed portions in general become integral parts of the owners' adjoining lands.   By means of such reclamations the line of high water mark is changed and carried into the harbor, and the owners' lands have gained the reclaimed shore by accretion ; the principles governing the case being the same as those which prevail where the sea recedes gradually by accession of soil to the land.

If the grant had been in terms of a right of way to and from the harbor the grantees would be entitled to come to the harbor, over whatever intervening accessions of soil might accrue between high and low water mark.   If the line of high water mark should be changed by natural or by artificial causes the rights of way would follow the changed line of the harbor, and this deed in connection with the map shows that the object of the deed was to enable the grantees to reach the harbor and by means of the right of way therein granted to connect their road on the east with the harbor and their road across the harbor on the west. The defendants by their charter had received from the state the general right to cross the public waters, and under this right so conferred and under the rights conferred by the deed in question the

defendants have constructed their railroad and bridge and have without objection occupied so much of the surveyed way as they have had occasion to use. It is true that the actual occupation of the defendants has not extended to the place where the structures in dispute were placed, but we think their rights extend to the harbor along the entire water front of the land described in the deed, and that the map referred to truly marks the limits of the defendants' rights, and that the plaintiff may not lawfully within those limits do any act interfering with or interrupting the defendants' right of way.

We therefore advise that judgment be rendered for the defendants.

In this opinion the other judges concurred.