## A. HINMAN ET AL., APPELLANTS, *v.* D. K. WARREN ET AL., RESPONDENTS.

TIDE LANDS—TITLE TO, MUST BE ACQUIRED FROM THE STATE.—Tide lands, those that are covered and uncovered by the ebb and flow of the sea, belong to the state of Oregon by virtue of its sovereignty. The United States government has no authority to so dispose of lands within a territory as to make it impossible to admit such territory into the Union upon an equal footing with the other states. In all matters that touch the sovereignty of the future state, the general government is simply a protector thereof, until such time as the territory becomes a state.

APPEAL from Clatsop County.

The facts are stated in the opinion of the court.

*Hill, Durham & Thompson,* for appellants:

The donation law of September 27, 1850, granted, upon the conditions therein expressed, lands to actual settlers. It was a manifest assumption of the sole right to control the public lands within the territory. The title to the land in controversy was in the United States at the time of the completion of the residence and cultivation of McClure, and his rights became vested under the donation law.

The act of congress, admitting the state of Oregon into the Union, February 14, 1859, contained grants of certain lands, but no provision in anywise affecting the title to the tide lands or the swamp lands of the state, and that the title to these lands was not deemed affected by any provision grant, is shown by the act of congress of March 12, 1860, extending the "act to enable the state of Arkansas, and other states, to reclaim the swamp lands within their limits" to the state of Oregon. It is an incontrovertible fact that to this day no act of congress has been passed, either directly or by implication, granting the tide lands to the state of Oregon. The ground upon which the right of a state to the tide lands within its limits is said to rest, is "the sovereign control of the state over the easement, or right to navigation." (*Gray et al.* v. *Hermana,* 5 Cal. 74.)

If this is the correct doctrine, then it follows that the right of a state is only a sovereign right, attaching when the state becomes a sovereign by reason of its admission into the Union. But prior to that time the United States is the sovereign, and has all the powers which the state afterwards acquires, which is the right, as is contended by respondent, to dispose of the legal title to the tide lands, as well as other public lands. In this case, the right of the United States having been exercised, and the land disposed of before the admission of Oregon into the Union, no rights of the state ever attached. (*Pollard* v. *Hagan,* 3 Howard, 212.)

All the lands within the territories are in the first instance the exclusive property of the United States, to be disposed of to such persons, at such times and in such modes and by such titles as the government may deem proper. (*Irvine* v. *Marshall,* 20 How. 558.) The land in controversy was granted before the state of Oregon acquired any rights in relation to the public lands within its territorial limits.

*Dolph, Bronaugh, Dolph & Simon,* for respondents:

Public grants are to be construed strictly. (6 Pet. 691; 11 Pet. 420; 1 McAllister, 512; 23 How. 66, 68; 11 Pet.

544; 1 Black. 358.) Patents for lands, the sale of which has not been authorized by law, are void. (*Morton* v. *Nebraska*, 21 Wall. 660; *Brownline* v. *Clements*, 3 How. 580; *Sherman* v. *Buick*, 93 U. S. 209.)

The patent for a donation claim conveys no new title. It is merely confirmatory of the previous grant made by the law; evidence that the conditions of the law have been complied with by the donee. (*Langdeau* v. *Hanes*, 21 Wall. 521.) Tide lands are not granted by the donation law. The public lands intended to be granted by this act are clearly those which are susceptible of cultivation. Residence and cultivation are the principal conditions required of the settler. (Donation Act, secs. 4, 5.)

The whole policy of the government relating to the disposition of the public lands is against the proposition that tide lands are included and intended to be granted by the act. The instructions to government surveyors to meander the public surveys by ordinary high water-mark, and the practice of the government in the public surveys, give a settled construction to the law. (Zabriskie's Land Laws, 523; Rev. Stat. sec. 2476, p. 456.) Such is the construction given to the land laws by the courts. (*Barney* v. *Keokuk*, 4 Otto, 338; *McManus* v. *Carmichael*, 3 Iowa, 1; *Haight* v. *City of Keokuk*, 4 Id. 199; *Tomlin* v. *Dubuque R. R. Co.*, 32 Id. 106.)

If this view of the case be incorrect, still the patent did not issue until long after the state was admitted into the Union. As by the act of admission no reservation of the tide land in controversy was made in favor of the government or of appellants as its alleged grantees, the land passed to the state when she entered the Union, as completely and effectually at law as though the United States had then issued a patent to the state for it.

By the Court, McARTHUR, J.:

This is an action of ejectment. The land in dispute is tide land on the Columbia river. It is embraced within the description of land patented to John McClure and wife by the United States, March 27, 1866. The McClures received

the patent by virtue of compliance with the provisions of the donation land act. Their residence thereon and cultivation thereof began before the passage of said act, which took place September 27, 1850. The appellant claims by a chain of conveyances from the McClures. The respondents claim to have derived title from the state of Oregon by deed from the state authorities of date ——, 1875. The north line of the McClure donation claim runs north sixty-eight degrees east, and is some distance beyond the line of the ordinary high tide of the Columbia river. The land in controversy is a small cuniform tract near the north-west corner of the McClure claim, lying wholly within the limits described by the lines marking the ebb and flow of the tide.

Upon these facts two questions arise: 1. Do the tide lands belong to the state? 2. Did the patent of the United States invest in the McClures any estate in the land lying between the north line of their claim, as described in the patent, and the line which marks the ordinary high tide?

In answer to the first question our response is that the tide lands—those that are uncovered and covered by the ebb and flow of the sea—belong to the state of Oregon by virtue of its sovereignty. This doctrine is the clear result of the principle announced in all the cases from *Pollard's Lessees* v. *Hagan,* 3 How. 230, to *Barney* v. *Keokuk,* 4 Otto, 324.

But it is contended that this sovereignty did not attach until the state was admitted into the Union. This is true, but it is also equally true that the United States government has no constitutional or statutory authority to so act towards a territory, or so dispose of the lands within a territory, as to make it impossible to admit such territory upon an equal footing with the other states of the Union. In all matters which touch the sovereignty, the general government is, in the very nature of our system, simply a protector thereof until the territory assumes the ampler powers of a state, and becomes thereby enabled to assert and protect its own sovereignty. (*Pollard's Lessees* v. *Hagan, supra.*)

As the state became owner of the tide lands, it had the power, under the provisions of the act providing for the

sale of such lands, Mis. Laws, p. 644, to sell the same. It has, however, no authority to dispose of its tide lands in such a manner as may interfere with the free and untrammeled navigation of its rivers, bays, inlets and the like. The grantees of the state took the land subject to every easement growing out of the right of navigation inherent in the public.

The second question finds its solution in the application of the familiar principle that "a grant of land adjacent to a navigable river, below the farthest point inland to which the neap tide flows, extends only to the meander lines of high tide." This is the rule laid down by the general government to guide its surveyors. It is of no consequence that the calls of the McClure patent place the north line between high and low water-mark. In thus describing the land, the officers of the United States government acted without the authority of law, and it is well settled that an unauthorized act binds no one. (*Barney* v. *Keokuk, supra; McManus* v. *Carmichael,* 3 Iowa, 1; *Haight* v. *Keokuk,* 4 Id. 199; *Harbor Co.* v. *Munroe,* Walker Ch. R., Mich. 155.)

Judgment affirmed.