W. W. PARKER AND JAMES W. WELCH, EXECUTORS, ET AL., RESPONDENTS, *v.* JAMES TAYLOR, APPELLANT.

INJUNCTION—TRESPASS, WHEN WRIT WILL ISSUE TO PREVENT.—Where a shore-owner has the right, under the laws of the state, to erect wharves on the water-front adjacent to his land, an injunction will issue to restrain the erection of obstructions to such wharves.

ESTOPPEL.—A party is not precluded from asserting his title by the fact that he has been instrumental in causing a street improvement that imposed an expense upon another by reason of such others claims to the premises, nor by the fact that such other has paid the cost of an improvement chargeable upon the premises in controversy, with the full knowledge of and without objection from the party against whom the estoppel is sought to be pleaded. In such case it should appear that the acts of one were relied upon by the other in what he did.

NAVIGABLE STREAM—BOUNDARY OF LAND ADJACENT.—Lands patented by the United States extend to the meandered line of the stream, which is the line of ordinary high water.

IDEM—TIDE LANDS—WHARVES.—The land lying between high and low water belongs to the state and can be sold by it. The state has power to provide for and regulate wharves, which it has done by act of the legislature. (Mis. Laws, 787.) A shore-owner acting under the authority conferred by the statute, and conforming to the restrictions imposed, may construct wharves from his land into navigable water so far as is necessary or convenient to accommodate shipping, provided he does not impede navigation.

SHORE-OWNER—SALE BY, DOES NOT TRANSFER RIPARIAN RIGHTS.—W., being a shore-owner of lots 5 and 6, made application to purchase from the state the adjacent tide lands. While such application was pending he sold one hundred and twenty-five feet of said lots. The one hundred and twenty-five feet included all of said lots above high water, and extended over a part of the tide land applied for to a street which was in greater part laid out over such tide land: Held, that by such sale the purchasers did not acquire any rights beyond the one hundred and twenty-five feet. The after-acquired title of W. in so much of the tide lands as were included within the one hundred and twenty-five feet vested in them and nothing more. The land over which the street is located, and the riparian rights adjacent thereto, remained in W., subject to the right of passage by the public over the street.

APPEAL from Clatsop County.

In 1860, James Welch, deceased, purchased from John M. Shively and wife, lots 5 and 6 in block 134, and lot 1 in block 135, in the town of Astoria. The lots so purchased were a part of the donation land claim of Shively and wife. A portion of the lots on the south were above high water. They extended on the north into the Columbia river below low-water mark to the ships channel.

The state claiming to own the land between high and low water, Welch afterwards, in 1876, purchased the state's title to such portions of these lots and took its deed therefor. While the application to purchase from the state was pend-

ing, Welch sold one hundred and twenty-five feet to Koefed, Cone and Reynolds off of the south part of lots 5 and 6. This included all of said lots above and below high water to a street called Water street.

In 1871, Shively and wife executed their deed to Taylor, the appellant, for certain lots which he, Shively, had laid out below low-water mark, and in front of the lots purchased by Welch in 1860, Taylor claiming under this purchase, and Cone and Reynolds claiming riparian rights under their purchase of lots 5 and 6 from Welch, proceeded to improve and drive piles in front of lots 5 and 6 in block 134, and lot 1 in block 135. Welch thereupon brought this suit to prevent the continuance of the work.

In his answer, Taylor set up the deed of Shively and wife to himself of April, 1871; his actual and open possession thereof since said date; a permit by the common council of Astoria, to make the improvement in question and that the plaintiff ought to be estopped to deny his right, for the reason that Welch with others petitioned for the improvement of said Water street, knowing that a large part of the cost of the improvement would fall upon him, Taylor, by reason of his ownership of the property in dispute, and that said street was so improved and such cost was paid by him, Taylor, with the knowledge of Welch and without claim of ownership by him.

These portions of the answer were struck out on motion. The court decreed the relief prayed for and Taylor appealed.

Pending the suit Welch died, and James Welch, one of the heirs of the deceased, and W. W. Parker, executors, were substituted as parties plaintiff.

The subjoined plat represents the location of the lots and premises referred to. The letters A. B. C. D. represent the tract below low water purchased by Taylor from Shively. The letters H. I. J. K. represent the premises in dispute, below low-water mark and fronting lots 5 and 6 in block 134 and lot 1 in block 135. The two irregular lines represent the high and low-water marks on the Columbia river. Welch claims the premises in dispute by reason of his ownership of the adjacent shore and tide lands.

*W. D. Hare, F. J. Taylor, and Hill, Durham & Thompson,* for appellant:

The allegations in the complaint are sufficient to entitle the plaintiffs to recover in ejectment, or forcible entry, either of which furnishes the plaintiffs a full and complete remedy at law. This case is not taken out of the rule by the allegation that defendant's entry was under some claim of right, because, in this state, the legal title as well as the right of possession may be determined in ejectment, and in such action no claim of the defendant can prevail against the legal title which the plaintiffs say they have. (*Tomlinson et al.* v. *Rubio et al.* 16 Cal. 203.)

The complaint shows that the premises in controversy are below ordinary low water of the Columbia river. The plaintiffs could obtain no legal title to lands so situated, nor can they maintain a suit to quiet that which they never had by any process acquired. The fee of such lands belongs to the state, and have never in this state been granted to private parties, but subject to the public rights of navigation the state may permit the erection of private wharves thereon, and the person who once rightfully obtains possession of such lands may hold it against all the world, except the state. (*Coryell et al.* v. *Cain,* 16 Cal. 567; *Pollard's Lessee* v. *Hagan et al.,* 3 How. 212.)

The appellant went into actual possession, as the testimony shows, in 1871, under his deed from Shively and wife, which deed, though it did not convey the fee, did at least convey to appellant the right of possession, theretofore had and exercised by Shively. And the appellant, in the act of entering upon and holding the actual possession, as he did, was not and is not guilty of trespass, and the respondents have no standing either in equity or at law to question the appellant's right of possession. (*People* v. *Davidson,* 30 Cal. 379; *Attorney-General* v. *R. R. Co.,* 2 Green Ch. 136.)

In *The People* v. *Davidson* the court uses this language: "The clear result is that if a wharf built or threatened to be built upon tide lands or upon lands below the line of

low water, without public authority, is, or would be, injurious to commerce and navigation, and proceedings at law would not be adequate to the emergency, the erection may be abated or enjoined in equity; but where the wharf is not or would not be attended with any such result, the equitable jurisdiction fails, and the people are left to their legal remedies."

In this suit it is alleged that the part of the river in controversy is not now used for purposes of navigation, and that fact is conceded by all parties; nor do the respondents anywhere claim that the proposed wharf of the appellant is injurious to commerce or navigation, or that it is a nuisance. It follows that the remedy, if any, is at law. (*Stark* v. *Starr*, 6 Wall. 402.)

The state has not the power to part with the legal title to the lands in question, for they are the bed of the navigable stream, which is a public highway, held by the state in trust for the common benefit of the public. However this may be, it is true that the state has not parted with its title, and it follows that the respondents are not the owners of the legal title. The respondents can not maintain any rights claimed by them as riparian proprietors. The rule applicable to fresh water rivers has no application to tide waters where the tide ebbs and flows. (*Jones* v. *Soulard*, 24 How. 41.)

The case of *Jones* v. *Soulard* was ejectment for the recovery of land claimed as an accretion by the shore-owner. The land was on the shore of the Mississippi river, at St. Louis, where the river is navigable, but is not affected by the ebb and flow of the tides; and in deciding the case the court said: "The doctrine that on rivers where the tide ebbs and flows grants of land are bounded by ordinary high-water mark has no application to this case, nor does the size of the river alter the rule."

The owner of lands on tide waters have no rights as riparian proprietors extending beyond the line of ordinary high water. (*Dana* v. *Jackson St. Wharf Co.*, 31 Cal. 118; *Stevens* v. *P. & N. R. R. Co.* (3 Am. 269), 34 N. J. 532;

*People* v. *N. Y. Ferry Co.* 68 N. Y. 71; *Gould* v. *Hudson R. R. Co.*, 6 Id. 522.)

There is another rule which we invoke, and which, applied to this case, will defeat all claim based on the idea of riparian proprietorship. Such right can not be extended beyond the street or public highway in front of the upland. (*The Schools* v. *Risley*, 10 Wall. 91.) It nowhere appears and is not seriously contended that respondents have or ever had any possession of the land, and for that reason this suit can not be maintained. (*Stark* v. *Starr*, 6 Wall. 402.) The city of Astoria had authority under its charter to grant the license to appellant. (Laws of 1872, p. 194.)

All that part of the answer alleging facts which it was claimed ought to estop the respondents was stricken out, and the testimony upon this subject was not fully taken, but there is sufficient in the testimony to indicate that this is not a case where strained constructions of law or doubtful inferences of fact ought to be made.

The acquiescence of James Welch, deceased, in all that was done about the premises, the understanding between him and the appellant about the improvement of Water street, the payment by appellant of large sums of money to Shively for the property, with the full knowledge and acquiescence of Welch, and the expenditure of one thousand eight hundred dollars in improving said street upon the petition of Welch, all show good faith upon the part of appellant, and throw about this claim of respondents such an air of immorality that equity will not now sustain their claim.

*Dolph, Bronaugh, Dolph & Simon and W. W. Thayer,* for respondents:

A grant of land adjacent to a navigable stream extends only to meander lines of ordinary high water. (*Hinman* v. *Warren*, 6 Or. 408; *R. R. Co.* v. *Schurmier*, 7 Wall. 272; *Kraust* v. *Crawford*, 18 Iowa, 549.)

The owner of the shore, by virtue of such ownership, has a right to construct wharves, bridges, piers and landing places below low-water mark, if he conforms to the regula-

tions of the state, and does not obstruct the paramount right of navigation. (*Dalton* v. *Strong*, 1 Black. 23; *Railroad Co.* v. *Schurmier*, 7 Wall. 272; *Yates* v. *Milwaukie*, 10 Wall. 497; *Grant* v. *Davenport*, 18 Iowa, 179; Angell on Tide Waters, 171.)

This right may be transferred without the shore, or may be reserved upon sale of the shore. (*Goodsell* v. *Lawson*, 42 Md. 348; *Emuns* v. *Turnbull*, 2 Johns. 322.)

Tide lands belong to the state by virtue of its sovereignty, and do not pass by United States patent. (*Pollard* v. *Hagan*, 3 How. 212; *Goodtitle* v. *Kibbe*, 9 Id. 477, 478; *Den* v. *Jersey Company*, 15 Id. 426; *Ward* v. *Mulford*, 32 Cal. 365; *People* v. *Davidson*, 30 Id. 379; *Barney* v. *Keokuk*, 4 Otto, 338; *McManus* v. *Carmichael*, 3 Iowa, 1; *Tomlin* v. *Dubuque R. R. Co.* 32 Id. 106.)

Even if there is a street where the roadway has been built, and that less than the usual width of a street above low-water mark, Welch would retain the fee and the riparian rights appurtenant. (*Banks* v. *Ogden*, 2 Wall. 57.) Plaintiffs are entitled to the remedy of injunction. (*Georgetown* v. *Alex. Canal Co.* 12 Pet. 91; *Hougham* v. *Honhey*, 42 Iowa, 364.)

By the Court, Boise, J.:

It is claimed that the court erred in overruling the demurrer to the amended complaint. As the appellants did not stand by their demurrer, they waived all the causes thereof, except that the complaint does not state facts sufficient to constitute a cause of suit. The questions presented in the complaint are matters within the jurisdiction of a court of equity. The complaint shows that the respondent is the owner of land immediately above high water, and of the adjoining tide lands, and claims that he has a right to build a wharf or wharves on these lands, and to extend them beyond low water on the lands in controversy, and that the appellant is building obstructions that will prevent him from thus extending his wharf or wharves beyond low water, and that he threatens to continue and maintain these obstructions, and continue to interfere with respondent's use of this

property, and asks for an injunction to restrain appellant from the continuance of these unlawful acts. Welch, being the owner of the shore, has by the law of the state a right to build a wharf or wharves on the land in question and reclaim it from the water. This he can not do unless Taylor is restrained from placing obstructions in the way of his contemplated improvement. It is the threatened interference with the future enjoyment of Welch's franchise that he complains of and asks to be protected against by injunction. This an action of trespass or for a nuisance could not reach, and the proper remedy is by injunction.

The learned author, in 2 Story's Equity Jurisprudence, says: " Formerly, indeed, courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses. But now there is not the slightest hesitation if the acts done or threatened to be done to property would be ruinous or irreparable, or would impair the just enjoyment of the property in future. If indeed courts of equity did not interfere in cases of this sort, there would be a great failure of justice in the country." We think, therefore, that the court has jurisdiction of the subject-matter of this suit, and that the complaint makes a sufficient case for its exercise.

It is also claimed that the court below erred in striking out certain parts of the appellant's answer, and particularly that part thereof which sets forth an estoppel, which plea is set forth in the statement of the case. The question as to the error of the court in allowing the motion to strike out this part of the answer is rendered immaterial in the consideration of the case in this court, for the reason that the evidence in the case shows that the appellant, James Taylor, was not induced to make the improvements on the premises in question, on Water street, from his reliance on the representations of Welch, which are set out in the plea of estoppel, and he was not therefore injured by the ruling of the court in that regard. If this court were to sustain the plea of estoppel, and send the case back to the circuit court, that an issue might be made thereon, the evidence now in the case would defeat the plea, for it is evident from all the facts that Taylor was aware when he made these improve-

ments that Welch claimed the right of wharfage on the property in controversy.

We shall not therefore at this time discuss the merits of this plea of estoppel as to its form, deeming it immaterial in view of the evidence now in the case, taken since the ruling of the court on the merits of this plea. As to the other parts of the answer stricken out, we do not deem them material in settling the rights of the parties in this suit. As to that part of said answer which alleges possession in Taylor for twenty years, it can not be a defense in this case, for the reason that to make it available we would have to hold that the statute of limitations runs against the state, for the state did not part with its title until 1876. We will now proceed to consider this case on the merits.

We will first consider the facts of the case, first those admitted, and second, those we deem established by the evidence. It is admitted that James Welch in his life-time was the owner in fee of lot 1 in block 135, and lots 5 and 6 in block 134, in the city of Astoria, as early as the year 1860, or so much thereof as lies above the line of ordinary high water of the Columbia river, and that the line of ordinary high water of the Columbia river is about sixty-five feet north of the south boundary line of said lots. The evidence establishes the following facts: That about September, 1875, James Welch made an application to the proper authorities of the state to purchase the tide lands in front of these lots, and on the nineteenth day of August, 1876, received a deed from the state for the tide lands in front of and on lots 5 and 6 in block 134, and on the eighteenth day of September, 1876, received a deed from the state for said land on and in front of lot 1 in block 135. Through these deeds and his said admitted title from Shively, Welch derived his title to these lands in controversy, which are now claimed by his administrator and heirs. It is also admitted that John Shively and wife were the owners by patent from the United States of these lands above high water, and that Welch obtained his title to the said lots from said patentees, and that said Shively laid out the city of Astoria, in conjunction with Welch, who claimed to own

said town lots in conjunction with Shively. Shively and Welch divided the town property between them, Shively obtaining the patent and deeding to Welch his half of the lots and blocks.

After the town had been laid out, including all the land above high water, and in the part of the plat in question, extending beyond the line of ordinary high water, Shively laid out some lots below ordinary low water, including the land now in controversy, and claimed to own them. He afterwards deeded to Taylor the property in dispute, and it is through this deed from Shively that Taylor derives his title, so far as he has a title by deed. Taylor took possession under his deed, and erected some structures on piles on the premises, and claims that this property being beyond low water, is not the subject of purchase from the state, or of ownership by the owner of the tide lands and shore adjoining, and that if Welch did get the tide lands and adjoining land above high water, he is not thereby entitled to this property lying between the said tide lands and the ship channel of the Columbia river. To determine this question involves the consideration of certain legal propositions which we will now proceed to consider.

1. The patent extended to the meander line of the Columbia river, which was the line of ordinary high water. (*Hinman* v. *Warren*, 6 Or. 408; 7 Wall. 274.)

The tide lands lying between high and low water belong to the state, and can be sold by it. The state has also the power to provide for and regulate wharves, which it has done by act of the state legislature. It is provided: "That the owner of any land in this state lying on any navigable stream or other water, and within the corporate limits of any incorporated town therein, is hereby authorized to construct a wharf or wharves upon the same, and extend such wharf or wharves into the stream or other water beyond low-water mark, so far as may be necessary and convenient for the use and accommodation of any ship or other boats or vessels that may navigate such stream or other water." It is also further provided: "That the corporate authorities of the town wherein such wharf or wharves is proposed to be

constructed, shall have the power to regulate the privilege or franchise so granted." (Mis. Laws, 787.) Under this provision of the statute, any person within an incorporated town in this state may build and maintain a wharf from his land at high water into navigable water, so far as is necessary or convenient to accommodate shipping, if he conforms to the legal restrictions imposed on him by the authorities of the town and does not impede navigation. Such structures are erected in all commercial towns, and have been recognized as legal structures in all the states. (37 Conn. 387; 18 Iowa, 178; Angell on Tide Waters, 171, 234; 7 Wall. 272.) This right of wharfage is a franchise appurtenant to the riparian owner, and if any person builds a structure which interferes with it, by intervening between the shore and the deep water where ships can come and ride in safety, the owner of the shore may have such structures removed, so that his wharf can be extended to a place convenient for the uses of commerce. If these views as to the rights of riparian owners are correct, it follows that if Welch was the owner of the shore, he had the exclusive right to wharf out to the ship channel. We will now return to the consideration of his riparian ownership at the time this suit was brought.

In September, 1875, when he made his application to purchase the tide lands in front of and on these lots, he was the owner of so much of the lots as were on the Shively claim, the north line of which is agreed to be about sixty-five feet from the south line of the lots, making the lots lie sixty-five feet on the Shively claim south of high water, and sixty feet on the tide land north of the line of high water. While this application was pending, Welch sold one hundred and twenty-five feet of lots 5 and 6 in block 134, to other parties. This sale conveyed to his grantees all the land on these lots above high water, and a part of the tide land which he afterwards got by his deed from the state, in front of and on said lots 5 and 6. It is claimed that when he sold the land immediately above high water, he then ceased to be a riparian owner, and that transfer rested in his grantees all the tide lands on and in front of these lots. As has been before stated, the patent from the United

States conferred on the patentee no right to the tide lands lying between high and low water. These were the property of the state and absolutely at its disposal. Its deed gives to them the same fee-simple title as the patent from the United States gave to the land above high tide.

Welch having a deed from the states holds all the land covered by the deed unless he has conveyed it by deed to some other person. Welch conveyed to Koefed, Cone and Reynolds, one hundred and twenty-five feet off the south ends of lots 5 and 6 in block 134. This would be all the land as far north as what is called Water street, and it is claimed that this street being a highway is vested in the public and the land conveyed by the deed from the state does not reach north of it. So far as this street is concerned it makes no difference whether it is a legal highway or not. If it was established by the city authorities while the land belonged to the state, the state was not thereby divested of its title in the soil. The street was only an easement on the land, the fee remaining in the owner. Such is the common law rule which has never been abrogated.

Welch, on purchasing land from the state over which a legal highway was located, would take the land subject to the right of passage by the public. He would have a right to extend his wharf out on a level with the elevated street, and the street would not interfere with his wharf, or his wharf with the free passage in the street. (*Banks* v. *Ogden*, 2 Wall. 57.)

Land situated as this is, covered with shoal water may, under proper regulations by the state and municipal authorities, be reclaimed from the sea by filling in or by driving piles and building on them, and becomes private property and the subject of sale the same as any other property. (*Lockwood* v. *N. Y. and New Haven R. R.* 37 Conn. 387.) And as this state has given such mud flats to the riparian owner as a franchise, he alone may reclaim the same, under such regulations as the state has or shall prescribe. We think, therefore, that Welch was the owner of that part of the tide land lying north of lots 5 and 6 in block 134.

As to lot 1 in block 135, no question is made but what Welch owned it and all the tide land on and in front of it, but it is claimed that he had sold the right of wharfing which appertains to lot 1. The testimony shows that at the time of the bringing of this suit the title was in Welch; that a dèed was made to the Parkers about the time the suit was commenced which was delivered after its commencement, and that a reconveyance was made before the suit was determined in the circuit court. W. W. Parker, the only witness on that subject, says that it was agreed between Welch and the grantees in this deed that Welch should clear the property of all claims. The deed was left in his possession to deliver at the proper time. It would seem then that if Welch was to prosecute this suit in his own name as the owner of the land to clear it of the appellant's claim, that the deed ought not to have been delivered until the suit was determined, and as it was improperly delivered and the land reconveyed, it did not operate to abate this suit. As the title was in the heirs when the final issues were made up in the case this conveyance should not embarrass the determination of the present rights of the parties to this property.

The evidence in this case shows that respondents are the owners of the property in question, and that the appellant, James Taylor, is interfering with and threatens to interfere with their enjoyment and use of it and that the injunction issued by the circuit court should be made perpetual.