[Filed March 9, 1886.]

## WARREN OLNEY et al. *v.* JOHN H. MOORE.

CONSTRUCTION OF STATUTE—REPEAL—TIDE-LAND—SHORE OWNER.—The effect of the repealing clause in the act of October 18, 1878, was to take away from the owners of lands abutting on the shore of rivers or bays within this state, where the tide ebbs and flows, any preferred right then existing and unexercised in them to purchase from the state the unsold tide-lands in front of the property under a previous act (of October 28, 1872, and amendments).

SAME—PRE-EMPTIVE RIGHT.—Owners who, prior to the taking effect of the repealing act, had availed themselves of their preferred right to purchase under the latter acts, and secured title from the state to such tide-lands, were not affected by the repeal.

SAME—FRAUDULENT PURCHASE.—Where one not entitled to such pre-emptive right fraudulently purchases the title of the state to such tide-lands, such purchase exhausts the power of sale of the state in such lands, and there remains no power to sell to the person entitled to purchase.

SAME—SUIT IN EQUITY.—But in such case a suit by the abutting owner who has been deprived of his right will lie against the fraudulent purchaser, to have his title inure to the benefit of the former.

SAME—STATUTE OF LIMITATIONS.—And this right of suit will not be cut off by the repeal of the act conferring the pre-emptive right, but only by the general statute of limitations. WALDO, C. J., dissenting

CLATSOP COUNTY.    Plaintiff appeals.    Decree modified.

Section 1 of an act approved October 28, 1872, provides : " That the owner or owners of any land abutting or fronting upon or bounded by the shore of the Pacific Ocean,. or of any bay, harbor, or inlet of the same, and rivers and their bays in which the tide ebbs and flows, within this state, shall have the right to purchase all tidelands belonging to this state in front of the lands so owned." And section 5 as amended by the act of October 26, 1874, provides that if any person entitled as above shall fail for a period of three years to apply, then such land shall be open to purchase by any other person who is a citizen and resident of the state.    Provided, that when application to purchase shall be made by any person not the owner of the adjacent lands, notice shall be given to the owner of such adjacent lands, and such owner shall have sixty days after service of such notice to make application for the purchase of such tide-lands,. and such application shall have preference over all others.  The foregoing provisions were repealed by an act which took effect January 16, 1879.

*C. H. Page*, for Appellants.

.*J. Q. A. Bowlby*, for Respondent.

LORD, J.  This is a suit in equity to have a certain deed executed by the board of land commissioners of the state of Oregon, adjudged to be fraudulent as to the plaintiffs ; and that the defendant be decreed to hold the tide-lands described in said deed in trust for the plaintiffs.  The main facts in the case upon which the decision hinges are undisputed.  It is admitted that lot 3 in block 3, now owned by the defendant, does not front or abut on the waters of the Columbia River, and that at the time the grantor of the defendant procured the title from the state to the tide-lands in controversy, upon the representation that said lot did thus front and abut on said river ; that such representation was false in point of fact, and in derogation of the preferred right given by the statute to the plaintiffs to purchase the same by virtue of their ownership of a certain tract of land which did then and does now front and abut on the waters of the said river.  The grantor of the defendant procured his title from the state to said tide-lands in 1876.  This suit was commenced by the plaintiffs in June, 1883.  The preferred right of abutting owners to purchase tide-lands in front of their property expired by limitation of the statute in 1879.  Upon this state of facts, while the defendant concedes that, if the plaintiffs had brought the present suit before such preferred rights to purchase had expired under the statute, they must have prevailed, he contends that they are without remedy when such preferred right to purchase expired by limitation of the statute before such suit was brought.  This argument is based on the assumption that the preferred right of the plaintiffs, as abutting owners, to purchase the lands in question was, and continued to be, a subsisting right until 1879, and that to enable the plaintiffs to maintain the present suit, their preferred right to purchase must be a subsisting one at

the time, and the foundation of it; that if the period within which the plaintiffs could have claimed or exercised such preferred right had elapsed before suit was brought, then such preferred right is gone or lost by their laches; and consequently, being without such right, the plaintiffs have no ground upon which to predicate their suit and invoke the intervention of equity. This reasoning limits the right of suit for the wrong done to 1879, when the statute extinguished the preferred right of abutting owners to purchase the tide-lands in front of their property, as otherwise, it is said, to allow the right of suit to depend upon the statute of limitations for its commencement would be to extend the duration of such preferred right beyond the time when such rights were to expire under the statute. The vice of this argument lies in the assumption that the preferred right of the plaintiffs to purchase the tide-lands in front of their property remained in them a subsisting right after the state had sold such lands to the grantor of the defendant in 1876, and until the repealing act took effect in 1879, and that unless their suit is brought within such period, and while such preferred right is a subsisting one and unexpired, they have no ground upon which to rest it.

Now, the effect of the repealing act was merely to take away the prior or preferred right to purchase of the abutting owners in whom such right was then extant, and the tide-lands in front of their property unsold; it did not touch any right of suit which then existed for the wrongful deprivation of such right. All of those who had failed or neglected to take the benefit of such preferred right, and secure the tide-lands abutting their property, lost such right by operation of the act. In these, such right, being then extant, and the tide-lands in front of their property unsold, the act extinguished.

But those who, as abutting owners, had availed them-selves of their preferred right to purchase, and secured the title from the state to such tide-lands, were not af-fected by the act; for they had no preferred right which the act could cut off—it was merged or extinguished in the higher title acquired from the state by its deed.

Nor were those who, as such abutting owners, had been deprived of their preferred right to purchase, by fraud, whereby a wrong-doer procured the title from the state to such tide-lands, affected by the act, because as to these, when such tide-lands were sold by the state and the title became invested in such wrong-doer, such right was merged or extinguished in the fraudulent title thus acquired. In these, then, there was no preferred right extant, or subsisting, after title was acquired to such tide-lands, and consequently, none existing when the act took effect, or which the act could cut off or ex-tinguish. The act was confined in its operation to those in whom there was a live right extant to purchase the tide-lands unsold in front of their property.

It is a mistake to suppose or assume that such pre-ferred right to purchase subsists in the abutting owner after the state has sold such tide-lands, and the title to it passed. Such right was absorbed or extinguished in the sale of the tide-lands to which it owed its origin or vitality, and ceased to be an existing right which such abutting owners could use, or avail themselves of to pur-chase such tide-lands. When, therefore, the grantor of the defendant procured by fraud or false representation, the title of the state to the tide-lands in front of the property of the plaintiffs, he wrongfully invaded and deprived them of their preferred right to purchase such tide-lands, and such right ceased to be a live subsisting right of which they could avail themselves to purchase such tide-lands. By the sale, the title had passed out of

the state, and with it the preferred right of purchase of the plaintiffs. The state had exhausted its power of sale in the premises, and could not again sell or pass title to such lands. There was, then, after the sale, no right of purchase left in the plaintiffs, and consequently, none when the act took effect which it could extinguish or was designed to extinguish.

But although the plaintiffs' right of purchase was gone, they were not without a remedy to redress the wrong done in depriving them of such right. With the loss of such right came a right of suit against the defendant wrong-doer to redress the wrong and make his wrongful act, whereby their right of purchase became merged in his title, inure to their benefit. The object of the suit is not to enforce such right, but to redress the wrong in depriving them of such right by adjudging the title thus fraudulently acquired to inure to their benefit. Nor is the ground of it predicated on the existence of any right of purchase still subsisting in the plaintiffs which is sought to be upheld or enforced. That we have seen was extinguished after the sale. But it is predicated on the fraud which deprived the plaintiffs of such right to purchase the tide-lands in dispute, and the intervention of equity is sought, not to have decreed that the defendant holds such right in trust, but that he holds the title thus fraudulently acquired in trust for the plaintiffs. The mistake of counsel is in assuming that the right of purchase continued to be a subsisting right after the sale, and that its existence is essential to sustain the suit; and hence, if the suit was not brought before the act took effect, the right was cut off, and with it went the right of suit. But we have seen the case is otherwise, and that such right did not exist after the sale, and could not be affected by the act. The plaintiffs' right of suit, therefore, is not limited by the act, but by the general statute of limitations.

From these views, it follows that the defendant is a trustee for the plaintiffs, and that upon payment by the plaintiffs to the defendant of the amount of money paid by his grantor to the state for said tide-lands, with lawful interest thereon from the date of such payment, they are entitled to a deed of such lands from him, and that neither party should recover costs or disbursements in the suit, either in the lower court or this court, and that a decree be entered herein in accordance with this decision.

WALDO, C. J. (*contra*). Passing other questions in the case, and granting that at the date of the deed to Russel the plaintiff was the shore-owner with the right to purchase the land in controversy, the question to be decided is, whether this right can be asserted against a stranger who procured a deed from the state while plaintiffs' exclusive right to make application for a deed existed, but who had failed to make any such application or to take any steps to assert his right, until after such right had expired by the limitation of the statute.

If the plaintiff were the eqitable owner of the land deeded to Russel, his title could only be barred by an adverse holding of ten years. But it seems certain that the plaintiff had no title to the land while in the hands of the state, legal or equitable. Has he any such title to the lands in the hands of the defendant? He is certainly asserting such a title against him. If he have such a title, how has it been acquired? The answer to this question seems to be that the plaintiff has acquired title to such lands by some act of the defendant. But the defendant was not the plaintiffs' agent. Agency rests on contract. We, as yet, know nothing of an agent *de son tort*. There is no principle of estoppel that will apply. Hence the mere act of the defendant in

taking a deed from a party in whose hands the lands were free from any claim of title on the part of the plaintiff can hardly, of itself, on any principle that suggests itself, confer a title on the plaintiff.

Recurring to the statute, it will be observed that the relation established between the state and the shore owner is not that of parties to a unilateral contract under the statute of frauds, where one party is bound to convey in a given time if another party, not bound, shall choose to ask performance. The statute is merely a voluntary offer made by the state to the shore-owner, giving him an exclusive privilege to purchase on certain terms within a certain time. He signifies his consent to the proposition made by the state by making application as provided by the statute. The offer is revocable at any time before the deed is made. Were the terms $10,000 a lot, application would, doubtless, be less frequent, but the case would be the same.

Now, it happens that during the time the plaintiff has the exclusive right to apply for a deed, a stranger applies and gets a deed. It seems illogical to say this act which interfered with the plaintiff's exclusive right, or rather privilege, invests the plaintiff at once, without more, with an equitable title to the land. *Non constat* that he had, at any time before or since, even so much as an intention to make application himself. The fact would seem to be that he must assert his privilege, or in other words, must accept the proposition made by the state before anything approaching an equitable title could vest. The lands in the hands of the defendant will be subject to the exercise of the plaintiff's option as though no conveyance had been made. He can assert that option at any time before it expires, by calling on the defendant to convey to him. Having made such call, he has performed the condition precedent which

gives him a right to call for a conveyance. But in this case the plaintiffs' rights under the statute had expired by limitation long before any right was set up under the act. Therefore I am of opinion that the decree ought to be affirmed.