Argued 30 June, decided 1 August, 1904.

## MUCKLE *v*. GOOD.

[ 77 Pac. 748.]

OWNERSHIP OF LAND BETWEEN HIGH AND LOW-WATER MARK.

1. Land between ordinary high and low-water mark along a tidal stream belongs to the State, and *prima facie* its deed carries the title.

QUIETING TITLE — NEED OF ADVERSE POSSESSION.

2. A naked claim of title by adverse possession not based on color of title, or accompanied by actual possession, will not support a suit to quiet title, or require a showing of the defendant's claim.

From Columbia : ARTHUR L. FRAZER, Judge.

Suit by James Muckle, Jr., and Charles Muckle against James Good to quiet the title to certain land. From a decree for defendant plaintiffs appeal.          AFFIRMED.

For appellant there was a brief over the name of *Dillard & Day*, with an oral argument by *Mr. William B. Dillard*.

For respondent there was a brief and an oral argument by *Mr. Samuel H. Gruber*.

Mr. Justice BEAN delivered the opinion of the court.

This is a suit to quiet title to a tract of land on the Columbia River, in front of the Town of St. Helens. The plaintiffs do not assert any record or paper title, but base their right alone on an alleged adverse possession for more than ten years. The defendant denies that the plaintiffs are the owners or in possession of the property, and asserts title in himself by mesne conveyances from the grantees of the State; alleging that it is tide land, and as

such was conveyed by the State to his predecessors in interest in 1883. The land in question lies along the margin of the Columbia River, between low-water mark and a precipitous ledge of rock about one hundred and fifty feet distant therefrom. This ledge of rock is practically parallel with the river, and forms the east line of the Strand — a street in St. Helens — and the west bank of the river, making the line of high water. The Columbia River at St. Helens is a tidal stream, and at an ordinary stage of the water is affected by the diurnal tides from the ocean. At extreme low water the tide rises perpendicularly from one to four feet, and a space of from fifty to sixty feet wide of the land in controversy is alternately covered and uncovered by the ordinary fluxes and refluxes of the tides. During the winter and spring freshets, however, the rain and melting snows cause the river to rise to such a height that for a month or two in the winter and two or three months in the summer the effect of the tide is not perceptible. During such time the water extends up to the perpendicular bank of the stream, and the land in controversy is entirely covered. The land covered and uncovered by the tide at extreme low water becomes submerged whenever the river has risen from two to four feet. The water is still affected by the tides, however, though in less degree; another but narrower strip of land, farther up the shore, being covered and uncovered by it. As the water continues to rise, the tides flow and reflow over another still narrower strip of shore, until the perpendicular bank is reached.

1. For the plaintiffs it is contended that, upon this state of facts, the deed from the State to the defendant's grantors conveyed no title, because the land is not tide land, within the meaning of the act of 1878 (Laws 1878, p. 41,) authorizing the sale of such land. We do not think it necessary in this case, however, to determine that ques-

tion. The land lies between ordinary high and low water, and was therefore, in any event, the property of the State: *Hinman* v. *Warren*, 6 Or. 408 ; *Parker* v. *Taylor*, 7 Or. 435 ; *Olney* v. *Moore*, 13 Or. 238 (11 Pac. 187); *Bowlby* v. *Shively*, 22 Or. 410 (30 Pac. 154); *Shively* v. *Bowlby* 152 U. S. 1, (14 Sup. Ct. 548). The river is a tidal stream. The board of school land commissioners found the land to be in fact tide land, and as such conveyed it to the defendant's prededecessors in interest. The title thus acquired by the grantees of the State is good against the plaintiffs, who, in our opinion, have no title, either legal or equitable.

2. A mere presumptive title, founded upon a lawful possession under a claim of right, may in some instances be sufficient to sustain a complaint to remove a cloud from title against an adverse claimant, whose title is weaker than that of the plaintiff, or who has no title at all : *Giltenan* v. *Lemert*, 13 Kan. 476 ; *Loomis* v. *Roberts*, 57 Mich. 284 (23 N. W. 816). A mere naked claim of title, however, by a plaintiff not in possession, is not sufficient to authorize him to institute a suit, or require an exhibition of the nature of the estate or title of the defendant. The plaintiff must have some right based upon title, actual or presumptive, and such title must be shown by him before the adverse claimant can be required to produce the evidence upon which he rests his claim : *Stark* v. *Starrs*, 73 U. S. (6 Wall.) 402. Now, in this case the plaintiffs do not assert any paper or record title, but base their right alone on adverse possession, and this claim is not supported by the testimony. At the time this suit was instituted, no part of the property was in the actual possession of any one, except a small space occupied by a building of the defendant. Plaintiffs never had such an exclusive, open, and hostile possession under a claim of right as to give them title by adverse possession. The

testimony upon this point is clear and convincing, and it would serve no useful purpose to set it out in detail.

The decree is therefore affirmed.          AFFIRMED.

Mr. Chief Justice Moore took no part in this decision.

---

Decided 20 June, 1904.