JOHN BUTLER v. THE GRAND RAPIDS & INDIANA RAILROAD COMPANY ET AL.[1]

*Public lands—Survey—Patent—Riparian rights—Ownership of island—Evidence—Estoppel—Bill to quiet title—Possession.*

1. A government patent may be impeached collaterally in any action, and its operation as a conveyance defeated, by showing a prior transfer of the land assumed to be conveyed. *Webber v. Boom Co.,* 62 Mich. 627 (head-note 5); *Burt v. Busch,* 82 Id. 506; *Cragin v. Powell,* 128 U. S. 691.

2. Where the government has surveyed its lands along the bank of a river, and has sold and conveyed them by government subdivisions, the patent conveys the title to all islands lying between the meander line and the middle thread of the river, unless, previous to its issuance, the government has surveyed such islands as government subdivisions, or unless it expressly reserves them when not so surveyed. *Fletcher v. Boom Co.,* 51 Mich. 277; *Webber v. Boom Co.,* 62 Id. 626; *Granger v. Avery,* 64 Me. 292; *Jones v. Soulard,* 24 How. 41; *Middleton v. Pritchard,* 3 Scam. 510; *Chandos v. Mack,* 77 Wis. 573; *Railroad Co. v. Schurmeir,* 7 Wall. 272.

3. The owner of certain city lots originally part of a tract of land patented by the United States as a government subdivision without reserving an *unsurveyed* island in the adjoining river, which had since become a part of the main-land by filling up the intervening channel, filed a bill to annul a later patent of the island, in which he described it as a "sand-bar" or "piece of ground," and as "a piece of middle ground," and as "middle ground," which description is held broad enough to include the term "island," even if the proofs should justify that description, in which case if the defendant has not been prejudiced or surprised, an amendment will be granted in the appellate court to conform to the proofs.

4. On the trial it appeared that the complainant had exercised acts of ownership over the premises in dispute, and that the defendant had never been in possession or had a title upon record; that the lots had been assessed to complainant by their

[1] An appeal has been taken in this case to the Supreme Court of the United States.

numbers, and he had paid the taxes; and that upon discovering that the defendant claimed to own the island under its patent, and that at its request it had been assessed to defendant corporation is an island by the number given it in a survey made subsequent to the issuance of the first patent, and under which the second patent was issued, the complainant protested against such action on the part of the assessing officer, and asserted his ownership to the center of the river, and that it was a double assessment. And it is held that the defendant is in no position to set up the doctrine of estoppel by non-claim on the part of the complainant, or by reason. of the payment by defendant of taxes under said assessment.

5. It further appeared that the city, in opening a street across a portion of the land originally included in said island, but not lying opposite the lots of the complainant, had prosecuted condemnation proceedings, in which the name of the second patentee was placed opposite the description sought to be condemned as claiming to be the owner thereof, and that such patentee had been awarded damages, and had been assessed as one of the property-owners benefited by the improvement, as had the complainant as owner of said lots; which proceedings are held not to estop the complainant from asserting his title to that portion of the island opposite his lots, and belonging to him under the doctrine laid down in this case.

7. It further appeared that the complainant had four houses upon the front of his lots, in one of which he resided, and that the land in dispute had been used by his tenants for various purposes. And it is held that his possession is sufficient to enable him to maintain his suit.

8. The "Scranton Abstract," so called, owned by Kent county, Michigan, and made a public record by Act No. 315, Laws of 1865, which gave it the same effect as that possessed by the original records in the office of the register of deeds of said county, together with the tract-book kept in said office, are held sufficient *prima facie* evidence of the contents of a lost patent; and if they fail to show the reservation by the United States of an island which otherwise passed to the patentee as riparian owner, the burden of proof is upon him who claims that such reservation was made to establish that fact.

Appeal from Kent. (Grove, J.) Argued February 25 and 26, 1891. Decided April 17, 1891.

Bill to declare a certain patent void as a cloud upon

complainant's title. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Butterfield & Keeney*, for complainant, contended:

1. It is settled law in this State that a grant of land bounded by a stream carries with it the bed of the stream to the center; citing *Norris v. Hill*, 1 Mich. 202; *Lorman v. Benson*, 8 Id. 18; *Ryan v. Brown*, 18 Id. 196; *Watson v. Peters*, 26 Id. 508; *Attorney General v. Booming Co.*, 34 Id. 462; *Maxwell v. Bridge Co.*, 41 Id. 453; *Twogood v. Hoyt*, 42 Id. 609; .*Boom Co. v. Adams*, 44 Id. 403; *Richardson v. Prentiss*, 48 Id. 88; *Cole v. Wells*, 49 Id. 450; *Turner v. Holland*, 54 Id. 300; *Clute v. Fisher*, 65 Id. 48; *Turner v. Holland*, Id. 453; and the question is one which rests with each state to determine for itself, and the decision constitutes for that state a rule of property, to which the United States authorities and all others will conform; citing *Webber v. Boom Co.*, 62 Mich 626; *Barney v. Keokuk*, 94 U. S. 337, 338; *St. Louis v. Myers*, 113 Id. 566; *June v. Purcell*, 36 Ohio St. 406; *Delaplaine v. Railway Co.*, 42 Wis. 225; *Olson v. Merrill*, Id. 211; *Norcross v. Griffiths*, 65 Id. 599.

2. The cases of *Webber v. Boom Co.*, 62 Mich. 626, and of *Fletcher v. Boom Co.*, 51 Id. 277, 283, conclusively establish for this State the following propositions:

   *a*—If the government does not meander an island, or indicate an intention to set it apart, it passes as appurtenant to the grant of the lands on the shore.

   *b*—The land so passing as appurtenant to the shore cannot at a subsequent time be surveyed and sold as an island.

   These principles are conclusive of this case upon what the Court must find to be the unquestioned facts, and are supported by the following additional cases: *Rice v. Ruddiman*, 10 Mich. 134; *Chandos v. Mack*, 77 Wis. 573; *Granger v. Avery*, 64 Me. 292; *Railroad Co. v. Schurmeir*, 7 Wall. 272; *Middleton v. Pritchard*, 3 Scam. 510; *Lunt v. Holland*, 14 Mass. 149; *Commissioners v. People*, 5 Wend. 423; *Ingraham v. Wilkinson*, 4 Pick. 268; *Holbert v. Edens*, 5 Lea, 204; *Fuller v. Dauphin*, 124 Ill. 542; *Railroad Co. v. Railroad Co.*, 26 Minn. 31; and the doctrine is applicable alike to islands already formed, and to sand-bars existing in the stream, which, by accretion thereto or in any other manner, in process of time become islands; citing *Jones v. Soulard*, 24 How. 41; *Berry v. Snyder*, 3 Bush, 266; *Deerfield v. Arms*, 17 Pick. 43.

3. Where the general land office has once made and approved a governmental survey of public lands, the plats, maps, field-notes, and certificates having been filed in the proper office,

and has sold or disposed of such lands, the courts have power to protect the rights of a party who has purchased in good faith from the government against the interferences or appropriations of subsequent corrective surveys made by the land office; citing *Cragin v. Powell*, 128 U. S. 691; *Lindsey v. Hawes*, 2 Black (U. S.), 554; *Bates v. Railroad Co.*, 1 Id. 204; *Burt v. Busch*, 82 Mich. 506.

4. A patent issued by the United States may be impeached collaterally in any action, and its operation as a conveyance defeated, by showing that the lands had been previously transferred to others; citing *Webber v. Boom Co.*, 62 Mich. 626; *Smelting Co. v. Kemp*, 104 U. S. 636; *Steel v. Smelting Co.*, 106 Id. 447.

5. Laches cannot be imputed to one in possession for delay in resorting to a court of equity for relief; citing *Michie v. Ellair*, 54 Mich. 518; *Mills v. Lockwood*, 42 Ill. 111; *Wilson v. Byers*, 77 Id. 76; *Ruckman v. Cory*, 129 U. S. 387.

*T. J. O'Brien* and *J. H. Campbell*, for defendants, contended:

1. This is a very proper case for the application of the doctrine of equitable estoppel in bar of complainant's claim. This doctrine applies in all cases where rights once valid are lost by delay, and the implied acquiescence resulting from such delay; citing 2 Story, Eq. Jur. § 1534; and the facts in this case establish fully a case of such estoppel against complainant:

   *a*—He comes into a court of equity to enforce a title resting upon a grant made fifty-five years before the filing of his bill.

   *b*—In the mean time neither he nor any of his predecessors in the chain of title which he sets up have ever, in any form whatever (not even on paper), asserted or attempted to exercise the title which he sets up.

   The following decisions of this Court fully sustain our position: *Hathaway v. New Baltimore*, 48 Mich. 251; *McVickar v. Filer*, 31 Id. 304; *Russell v. Miller*, 26 Id. 1; *Harlow v. Iron Co.*, 41 Id. 583; *Haff v. Haff*, 54 Id. 511; *Frost v. Society*, 56 Id. 62; *Hoard v. Stone*, 58 Id. 578; *Bumpus v. Bumpus*, 59 Id. 95; *Buhl v. Peck*, 70 Id. 44; *McLean v. Barton*, Har. Ch. 279.

2. The payment of the taxes and special assessments, under the facts of this case, ought, if standing alone, be enough to estop the complainant in this suit; citing *Fairfield v. Barbour*, 51 Mich. 57; *Stevens v. Hulin*, 53 Id. 93; *Curtis v. Campbell*, 54 Id. 340; *Murray v. Hudson*, 65 Id. 670.

3. The action of the superior court of Grand Rapids making the awards, and of the municipal board in assessing the complain-

ant to pay the railroad company as owner of island No. 5, and his payment of the assessment without objection, make the matter *res judicata*, and estop complainant from now asserting title; citing Herm. Est. §§ 435–441, 1241; and the adjudication in the condemnation proceedings can no more be impeached in collateral proceedings or by evidence than the judgment of any court of competent jurisdiction; citing *Hamilton v. Railroad Co.*, 1 Md. Ch. 107; *Railroad Co. v. Potter*, 42 Vt. 265.

GRANT, J. Complainant is the owner of lots numbered 5, 6, 7, 8, 9, and the N. ½ of lot 13, of Bryan & Ball's subdivision plat of the village of Kent, now part of the city of Grand Rapids. He derives his title from Lucius Lyon and E. P. Hastings, who obtained a patent from the United States November 5, 1833, for the N. fractional half of the S. E. ¼ of section 25, township 7 N., range 12 W. This land is located on the east bank of Grand river. In this river, and opposite to that portion of section 25 lying east of the river, lay a piece of ground now known as "Island No. 5," and containing the land herein controversy. Complainant claims the land by virtue of his riparian ownership. Defendant corporation claims the land by virtue of patent from the United States. Complainant claimed actual possession, and filed this bill, claiming that defendant's alleged patent constitutes a cloud upon his title, and prays to have it declared void in so far as it affects his title. A large mass of testimony was taken as to the character of this so-called "island" at the time of the original surveys and for some years subsequent; the complainant's testimony tending to show that it was at first a low sand-bar, covered a good part of the year with water, and the defendants' testimony tending to show that it was then a well-defined island. It is immaterial to determine what the facts are as to the condition of this land in those early days, for in our judgment it is of no consequence whether it was what

might be termed an "island" or a "sand-bar," or a "piece of low, wet ground." The law is the same in either case.

The land upon the east bank of the river was surveyed in 1831. The east bank was meandered at the same time, and so also was the west bank. Below will be found a map of that survey, as filed in the Surveyor General's office July 7, 1831:

On February 2, 1832, another map was filed, differing only from the former in that it contained the number of acres in each subdivision, and instead of the crooked lines in the first map, evidently representing land in the river, these lines are continued, so as to represent islands. The land upon the west side of the river was surveyed in 1837, and also four islands in the river were surveyed at the same time, and the acreage of each given. The

islands then surveyed are represented upon the map of the survey filed in the Surveyor General's office April 30, 1838, a portion of which, representing the location of these islands, is given on page 252. The west bank of the river was again meandered at this time. The acreage of these four islands and that of the main-land are given in this survey. In surveying island No. 3, the surveyor began at the lower end of the island. The eleventh course took him "to maple·on head of island." After taking his next course from the maple, he made the following record:

"Channel between this and Low Willow isle 75˙ lks. wide and 3' ft. deep, opposite ft. of Willow isle on left, 250 of low, wet ground on left to channel."

This "Low Willow Isle" is evidently what is now known as "Island No. 5," as changed by the action of the water.

In 1856, under instructions from the Surveyor General of the United States for Ohio, Indiana, and Michigan, a deputy surveyor surveyed this land as island No. 5. In 1871 the defendant obtained a patent for it, claiming that said patent was issued under the act of Congress approved June 7, 1864, granting lands to the State of Michigan for the construction of certain railroads. This patent was not recorded till August 9, 1887, and on September 9 following this bill was filed.

The channel between the islands and the east bank was from 75 to 100 feet wide. The channel between the islands and the west bank was several times wider. The depth of the water in each was about the same. The middle thread of the river was therefore west of the islands. About the year 1836 steam-boats were placed on the river, and docks were erected on the east bank, nearly opposite island No. 1. The principal business by boat was with the east side, where the city of Grand Rapids was situ-

ated. Steam-boats also ran up the west channel to a steam-boat warehouse on the west side of the river. About the year 1870 the east channel opposite islands Nos. 1 and 2 was filled up, and the city constructed a sewer into and through that channel. The upper part of this channel was gradually filled, mainly by the owners of land upon the east bank. By these fillings this island has for some time been connected with and become a part of the main-land. The channel has been dredged out east of island No. 3, and a steam-boat slip and landing constructed, the upper end of which is a considerable distance below island No. 5. The present situation is quite accurately shown by the following map:

The northern end of island No. 5 extended across Fulton street, while the southern end extended to a point nearly opposite to lot No. 16.

1. Under these facts the principal question in controversy is, did the original grant carry with it the title to the middle thread of the stream, or was it limited to the east meander line thereof? It is the well recognized rule in this State that a grantee of land bounded in the deed of conveyance by a stream takes title to the land under the water to the center or middle thread of the stream, in the absence of an expressed reservation. This rule applies to grants by the United States government as well as to grants by individuals. The legal maxim must here be borne in mind that all grants must be construed most strongly against the grantors. To this maxim the government forms no exception. Reservations cannot be implied. When, therefore, the government has surveyed its lands along the bank of a river, and has sold and conveyed such land by government subdivisions, its patent conveys the title to all islands lying between the meander line and the middle thread of the river, unless previous to such patent it has surveyed such islands as governmental subdivisions, or expressly reserves them when not surveyed. *Webber v. Boom Co.*, 62 Mich. 626; *Fletcher v. Boom Co.*, 51 Id. 277; *Granger v. Avery*, 64 Me. 292; *Jones v. Soulard*, 24 How. 41; *Middleton v. Pritchard*, 3 Scam. 510; *Chandos v. Mack*, 77 Wis. 573 (46 N. W. Rep. 803); *Railroad Co. v. Schurmeir*, 7 Wall. 272. In these cases the lands involved were all islands or "middle lands," and a full discussion of the principle and the authorities can there be found. It is enough for the present case to refer to the authorities which so clearly establish the principle. But we will call attention to the facts in *Granger v. Avery, supra,* as an illustration. January 28, 1793, the commonwealth of Massa-

chusetts deeded to the grantors of Granger certain lands on the bank of the St. Croix river, which formed the boundary line between that commonwealth and New Brunswick. The grant made no reference to the island, which was 16 rods wide and 65 rods long. September 29, 1794, the commonwealth deeded this island, known as "Grass Island," to a tribe of Indians. The court held that no title passed to the Indians, because by the deed to plaintiff's grantors of the land upon the shore the title to the island had already passed, and the commonwealth had nothing left to convey. The deed to the Indians was not recorded till June 9, 1842. The defendant Avery, claiming title from the Indians, went upon the island, and cut the grass, in 1854, and the plaintiff brought an action of trespass *quare clausum fregit*

This rule of the common law does not prevail in some states, whose courts hold that where the streams are navigable the title to the beds of the streams is in the state. *People v. Appraisers*, 33 N. Y. 461. So it is held in Iowa that navigability *in fact* forms the foundation for navigability *in law;* that the test of navigability is to be determined by use, or by public act or declaration; and that if, under this test, the stream be navigable, the boundary of the shore-owner is the high-water mark. *McManus v. Carmichael*, 3 Iowa, 1. This is also the rule in California. *Packer v. Bird*, 11 Sup. Ct. Rep. 210. But in this State the *medium filum aquæ* of our navigable streams is the boundary of the lands of the riparian owners, whose rights, however, are servient to the use of such streams as public highways.

In the present case there is no act on the part of the government showing any intention to reserve this land. The only inference that can be drawn from the facts is that the government agents (its surveyors) did not consider it of sufficient value to survey. It was not surveyed

until about 25 years after the survey of 1831, and not till nearly 20 years after the survey of 1837, when. the other islands and the lands upon the west bank were surveyed, thus completing the survey in that region.

The learned counsel for defendants assume that the government had the right to survey these islands in 1837, and thus reserve them to the government, and that it therefore had the same right in 1856. If their assumption be true, the conclusion is correct. It would then follow that the government has the right to survey any island in the river at the present time which has not been previously surveyed and sold. It would also follow that, if the government had not already surveyed and sold this island, it might now do so. Until the government has sold and conveyed its lands upon the banks of our fresh-water streams, it may of course survey any islands lying opposite them, and thus expressly reserve them out of the grant of the shore lands. The grant to Lyon and Hastings was made under the survey of 1831, by which both banks of Grand river were meandered, and by which the middle thread of the river was fixed west of this island. Under the authorities above cited, that grant clearly vested in them the title to the land in controversy. No subsequent survey by the government can deprive them of it. The government appears to have recognized this rule by discontinuing such surveys. *Chandos v. Mack, supra.*

2. There is no force in the objection made by the defendants that this is a proceeding to cancel a patent, which can only be brought by the government itself. So far as this action is concerned, the complainant cannot raise the question whether this land was included in the act of Congress by virtue of which the defendants claim title. But in this, or any similar action, it may be shown

that the title had passed by a former grant, and that the government had no title to convey. In such cases courts will protect purchasers from subsequent surveys. *Webber v. Boom Co.*, 62 Mich. 626; *Cragin v. Powell*, 128 U. S. 691 (9 Sup. Ct. Rep. 203); *Burt v. Busch*, 82 Mich. 506.

3. It is insisted by the defendants that the theory of complainant's bill is that this was not an island at the time of the original grant; that the proofs show that it was an island; and that, therefore, the complainant has made no case for relief. We think this is too technical a construction of the rules of pleading in equity courts. It is described in the bill as a "sand-bar" or "piece of ground," again, "a piece of middle ground," and again as "middle ground." We think this description broad enough to include the term "island," even if the proofs should justify that description. The defendants have not been prejudiced or surprised, and, if the defendants were technically correct, an amendment would be granted in this Court to conform to the proofs.

4. Complainant did not introduce in evidence the original patent, nor the original record of it, nor a certified copy of it. Defendants therefore insist that there is no evidence that this island was not reserved from the grant. The original patent, and the record thereof in the office of the register of deeds for the county of Kent, had been destroyed by fire. This fire occurred in 1860. There was in existence what is known as the "Scranton Abstract." This was purchased by the county of Kent, and by Act No. 315, Laws of 1865, the Legislature made it a public record, and gave it the same effect as the records in the office of the register of deeds possess. This was introduced in evidence, and showed the description above given of the land conveyed by the patent to Lyon and Hast-

ings.  The tract-book kept in the office of the register of deeds for Kent county was also introduced in evidence, and showed the same description to the same grantees. The original record having been destroyed, we think the complainant made out a *prima facie* case of the contents of the patent, and that the burden of proof was then shifted to the defendants to show a reservation, if any were made.

5.  Defendants insist that complainant is now estopped from asserting any claim to this island—

1.  By non-claim.
2.  By taxes paid by defendant.
3.  By condemnation proceedings.

Within a month after the defendants had recorded their evidence of title complainant filed this bill.  The defendants had never been in possession of the property.  Complainant had exercised many acts of ownership.  No rights of innocent third parties here intervene.  The defendants were in no position to set up the doctrine of estoppel by non-claim when they were neither in possession nor had a title upon record.

It is a sufficient answer to the claim of estoppel by the payment of taxes to say that this was done at the express request of the agent of the defendant corporation from 1874 to 1887, without any record title, and without any notice to the complainant; that said agent at the same time claimed that other lands belonging to the railroad company were exempt from taxation; and that immediately upon hearing of such claim the complainant protested to the supervisor, and asserted his ownership to the center of the stream.  We are cited to no case, and we think none can be found, which holds that a payment of taxes under these circumstances estops the owner from asserting his title.

In August, 1883, the common council took the neces-

sary steps for opening and extending East Fulton street from Waterloo street, and to condemn the land necessary for that purpose. It will be seen that this street extended across the upper end of island No. 5, but which at that time had become a part of the main-land by filling in the channel. That portion of island No. 5 required for such improvement was described as follows:

"So much of island No. 5 in Grand river  *  *  * as lies between the center line of East Fulton street produced westerly and a line parallel therewith, and distant 33 feet south therefrom."

Opposite the name of the owner was the following:

"Grand Rapids & Indiana Railroad Company claims to be owner of fourth parcel" (meaning the parcel above described).

The jury awarded compensation and damages to the defendant railroad company in the sum of $25. The common council assessed the cost of the improvement upon property-owners benefited, and among such owners was the defendant railroad company, assessed $850. Defendants' counsel state in their brief that complainant had full knowledge of these proceedings, and knew of this tax assessed against the defendant railroad company. We find no such evidence upon the record, unless it is to be inferred from the notice of publication in a newspaper, which is the only proof of service of such notice contained in the record. But, if complainant had been possessed of the full knowledge claimed, this could not deprive him of the title to his land. This improvement did not touch nor involve that part of island No. 5 owned by complainant. For aught that appears upon this record, the defendants might have owned the rest of island No. 5. Complainant's lots were assessed to pay for this improvement. Upon what principle can he be held estopped to assert his title by these proceedings,

which did not involve his land, and in which he was only interested as a citizen owning property in the vicinity? There was nothing upon the face of these proceedings to indicate to him that the title to any of his lands was involved, or even put in jeopardy.

6. Complainant has four houses upon the front of these lots, in one of which he lives. As already stated, the channel has been filled by him, so that the island and the main-land are now connected. It has, from time to time, been used by his tenants for various purposes. We think his possession sufficient to maintain his suit.

Decree affirmed, with costs.

The other Justices concurred.