ELIZABETH GRANT *et al.*, Appellants, v. LEROY HEMP-HILL *et al.*

2  Real Property: Meander Line. An owner of lands bounded by a meander line which is not referable to any body of water, and
3  which was run under the mistaken belief that it separated such land from a lake, is not entitled to the land lying between the said line
4  and the lake, and the latter land remains part of the public domain.

**Possession.**   The rule that one in possession can protect his pos-
sessory right against a trespasser, who denies his ownership, has no
application to unsurveyed public lands.

*Appeal from Palo Alto District Court.*—HON. LOT
THOMAS, Judge

SATURDAY, MAY 26, 1894.

THIS is a suit in equity, by which the plaintiffs
claim title to, and possession of, certain land, and they
demand that said title and possession be quieted as
against the defendants. A writ of injunction was
invoked and granted, by which the defendants were
restrained from taking the possession of the land in
dispute.   The district court entered a decree dismissing
the plaintiffs' petition, and they appeal.  The Chicago,
Milwaukee & St. Paul Railway Company intervened
in the action, claiming to be the owner of the land,
as part of its government land grant, and the petition
of intervention was dismissed.   The intervener appeals.
*Affirmed.*

*Soper, Allen & Morling* for plaintiff appellants.

*Geo. E. Clarke* for intervener appellant.

*J. W. Cory* for appellees.

ROTHROCK, J.—I.  A number of motions were
filed with the submission of the case.   They are
motions to strike out parts of appellees' abstract, and
to tax costs against appellees, and to strike an argument
in reply, and a motion by appellees to strike the inter-
vener's argument from the files because not filed in
time.   These motions are all overruled.   They are
not well taken.   The appellees' abstract was not un-
necessary, and, so far as it is an abstract of additional
evidence, it is sustained by the transcript of the evi-
dence.   The question is also presented, in argument,
by appellees, that the record of the evidence is not

complete, so as to authorize a trial anew in this court. This position does not appear to us to be sound. Another objection is made to the effect that the issues presented should have been tried as a law action, and that the wrongs of which the plaintiffs complain are not cognizable in a court of equity. This objection was made in the court below. We do not think this claim is founded on a correct view of the issues presented by the petition. It is a plain action in equity to quiet title, aided by an injunction to protect the plaintiffs' possession pending the suit. Preliminary to a consideration of the merits of the case, it should be stated that the only real party plaintiff is John T. Eaton. James Grant was a party plaintiff, and died before the cause was heard in the district court, and the executors of his last will and testament were substituted as plaintiffs, but they have no real interest in the case.

The land in controversy is the greater part of what is claimed to be section 19, township 97, range 34, in Palo Alto county. This township was surveyed by the United States in the year 1855, and the subdivisions of the township were surveyed in 1857. According to the government maps and plats, all but the west half of the northwest quarter, and two hundred and twenty-one and thirty-six hundredths acres of the section, was designated as under water. The two hundred and twenty-one acres were subdivided into five lots, numbered 1 to 5, inclusive. All of the surveyed land is situated in the northwest part of the section, and embraces the land on the north line a little more than half across the section, and from that point, in a southwest direction, to the south section line,— some eighty rods east of the southwest corner of the section. The land in controversy is that marked on the government plat as under water, and the last line described is what is known as a "meandered line." It

appears that the lots 1, 2, 3, 4, and 5 were claimed to
be swamp land, and the plaintiff Eaton claims to be
the owner thereof by a proper line of conveyances
from the government down to James Grant, deceased,
and by a contract of purchase from said Grant, dated
April 1, 1890, which describes the land purchased as
lots 1, 2, 3, 4, and 5 in said section, containing two
hundred and twenty-two and thirty-six hundredths
acres more or less. It is not claimed by Eaton that
there is less than that quantity of land in the five lots,
without including any part of the land designated on
the government plat as under water. In other words,
so far as appears, he has the full complement of land
which he purchased within the meandered line. Eaton
does not live on any part of the section. Before he
made his contract with Grant, he entered on that part
now in dispute, without any authority from anyone,
and broke up and put some of the land in cultivation.
After he made his purchase of the lots, he claimed the
whole of the section, because he was the owner of the
lots, and they were bounded on the east by the mean-
dered line, and he had the right to the land between
the meandered line and the waters of Lost island and
Mud or Palo Alto lakes. A large number of witnesses
were examined with reference to that part of the sec-
tion which is platted as under water.

We will not set out the evidence in detail. It
appears, from a very decided preponderance of the
evidence, that the land in controversy is not now, and
probably never was, any part of a lake. It is true that
some of the witnesses testify that the inlet of Mud lake
extended up into the land. But there is no evidence
that at or near the time of the survey, or since, there
has been any body of water anywhere on the land,
upon which to base a meandered line. Some of the
land, like all bodies of land in that country, is low,
flat, and marsh land, but the evidence shows that a

greater part of the land claimed by Eaton is dry, tillable
land, and that if it had been surveyed it would not
have passed to the state under the swamp-land grant.
The defendants conceived the idea that this land did
not belong to any riparian owner, but that it was part
of the unsurveyed public lands of the United States;
and they entered upon it, and erected small houses or
shanties, and claimed to be entitled to enter the land
as homesteaders. They made application to the dis-
trict United States land office, and their applications
were refused on the ground that the land was unsur-
veyed. This decision of the local land office was
approved by the commissioner of the general land
office. The plaintiff founds his action upon these
alleged trespasses of the defendants. The evidence
does not show that defendants removed any of the
plaintiffs' crops, or that any damage was done by them,
more than merely nominal. The defendants demanded
no affirmative relief, and the dismissal of the plaintiffs'
petition left the parties in the same situation they were
before the suit was commenced. A great many ques-
tions are discussed by counsel, which appear to us not
pertinent to either the issues presented, or to the evi-
dence. We have stated the respective claims of the
parties, and the character of the land in dispute, as
shown by the evidence, to the end that the rights of
the parties under the facts, as to pleading and proof,
may be clearly understood, for we think there is only
one material question in the case.

It is strenuously urged in behalf of appellant that
he is entitled to a decree protecting his possession
of the land, even though his claim of ownership
is denied; and we are cited to a large number
of authorities which hold that a mere possessory
right is sufficient to protect the possession, as against
a trespasser. This rule invoked by counsel, when
applied to persons in possession of unsurveyed public
lands, has no application. When lands are surveyed

and open to homestead entry, and possession is taken for the purpose of making the entry, it is a lawful possession and may be interposed to protect the right of the possessor against a trespasser; and the claim that one in possession of land is presumed to be the owner, if applicable to any case—a question which we do not determine—has no application to this case, because it is an action in equity to quiet title. If it were a mere action to recover for a trespass upon the land, it would be an action at law; and when the defendant moved to have it tried as an action at law the court would, no doubt, have sustained the motion. And, again, the plaintiff did not rest his case upon possession. His petition, and his own testimony and that of his witnesses, disclose the grounds upon which his possession is based. It is a claim of ownership because he is the owner of the adjoining land. If his ownership on this ground is well founded, he is entitled to a decree quieting his title. If he has no title to the land, he has no more right to the possession than the defendants. In other words, if the land in dispute is not owned by the plaintiff, and is not surveyed, and can not be sold or disposed of until it is surveyed, it is part of the public domain, to which no one can acquire either ownership or right of possession. It is to be understood that we do not hold that if a person should be found in peaceable possession of growing crops, under a good-faith claim of homestead right, on unsurveyed government land, that another person would not be liable for the injury or destruction of the crops. That question is not in this case. On this subject, see *Murphy v. Railway Co.*, 55 Iowa, 473, 8 N. W. Rep. 320.

II.   We come now to the material question in the case.   A section of land is supposed to contain six hundred and forty acres.   If section 19 had been all surveyed, it would have embraced a less number of acres, being what is known as "fractional."   As we have said, the five lots owned by

Eaton contain two hundred and twenty-one and thirty-six hundredths acres,. and the west half of the northwest quarter is marked on the plat of the government survey as containing fifty-eight and ninety-three hundredths acres. If the section were not fractional, the plaintiffs' claim would be a demand for a decree quieting title in him to more than three hundred and sixty acres of land, based on the ground that he is the owner of two hundred and twenty-two acres of land adjoining, of which he is a riparian proprietor, and he makes this demand in a court of equity. A riparian proprietor is one who owns land bounded upon a watercourse or lake. The evidence in this case shows that there was not at the time of the government survey, and is not now, any body of water east of the meandered line, on which to found any valid claim of land outside of the line, by accretion or reliction, or in any other manner. In the large mass of authority collected and cited by counsel, we find no case which can be said to sustain a claim made upon any such a state of facts. It is well understood that a meandered line is not regarded as a line of boundary. It is supposed to be along the shore of a body of water, and to follow the windings of the stream or lake, and the sinuosities of the banks. In such case, and where it appears that the government intended to sell all the land, to the river or body of water, the riparian owner is entitled to all the land adjacent to his grant, to the water's edge. *Kraut v. Crawford*, 18 Iowa, 549. But no such condition is found under the evidence in the case at bar. There is not, and has not been, any body of water upon which to locate a meandered line. In *Railroad Co. v. Schurmeir*, 7 Wall. 286, it was said: "Meander lines are run, in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the

stream, and as a means of ascertaining the quantity of the land in the fraction, subject to sale, which is to be paid for by the purchaser. In preparing the official plat from the field notes, the meander line is represented as the border line of the stream, and shows, to a demonstration, that the watercourse, and not the meander line as actually run on the land, is the boundary." We have cited this well settled principle, not for the purpose of approving and following it—for it is known and understood everywhere to be the correct doctrine—but to show that the meander line and the banks of a stream or shore of a lake can not be held to apply where there is no body of water to which it can be referred. In *Whitney v. Lumber Co.*, 47 N. W. Rep. (Wis.) 425, it was held that, where the meander line of a lot supposed to be on a lake was some distance away from the lake, the owner of the lot was entitled to have the meander line extended, or rather set over, so as to include all of the land in the smallest government subdivisions, or enough to make out forty acre tracts. It is claimed in behalf of appellant that he is entitled to at least this measure of relief. We are unable to discover any good reason for thus extending a government meander line. As we have said, there is no body of water anywhere within the boundary of the section to authorize any extension of the area of the lots which the government sold, and which the plaintiff now owns.

The foregoing discussion disposes of the claim of intervener. We hold that all of the land in dispute is part of the unsurveyed domain of the United States, to which no one can obtain title, except through the regular government methods adopted by the general government for the disposition of the public lands. The decree of the district court is AFFIRMED.

THURSDAY, OCTOBER 18, 1894.

ROTHROCK, J.—The plaintiff and the intervener in this case filed petitions for rehearing, and, said petitions having been submitted, we desire to say that the statement in the opinion, that John S. Eaton is the only real party plaintiff, is not entirely correct.   It appears that the executors of James Grant, deceased, are parties havingan interest in the suit.   The statement that all of the surveyed land is situated in the northwest part of the section is also inaccurate.   The fact is that two of the surveyed lots are in the northeast part of the section.   These errors of fact do not, in our judgment, in any manner affect the rights of the parties, and we make these corrections for the sake of accuracy only.   We are united in the conclusion that the petitions for rehearing should be, and they are, OVERRULED.