GEORGE SCHLOSSER v. WALLACE CRUICKSHANK, Appellant.

S. J. CALDWELL v. R. J. JACKSON, Appellant.

JOHN McNARY, *et al.*, v. RICHARD B. JACKSON, Appellant.

**Meander Line: EVIDENCE.** A lake meander line run by a government survey touched the shore line of the lake in one or two places only, and so ran as to leave a large tract of land between the meander line and the actual shore of the lake; but the line appears on the plat of the government survey as being coincident with such shore. Most of this land is high and not subject to overflow. Plaintiff is the holder of a patent to a tract lying along the meander line. The land, without any lying between the meander line and the actual shore of the lake, contains the number of acres which the patent recites. The patent makes no reservations and the government has never asserted title to the land between the said line and the lake shore. *Held*:

    a.  A meander line is not a boundary. It merely determines the sinuosities of water banks and what fractional part of a government subdivision is subject to sale and to be paid for.

    b.  Plaintiff is a riparian owner and holds all the land between the meander line and the high-water line of the lake.

    c.  Under these circumstances, evidence *aliunde* is not admissible to show the meander line was intended as a boundary. *Lammers v. Nissen*, 4 Neb. 245; *Bissell v. Fletcher*, 28 N. W. Rep. (Neb.) 303; *Bigelow v. Hoover*, 85 Iowa, 162; and *Glenn v. Jeffrey*, 75 Iowa, 20, *distinguished*.

**Practice.** In an action to quiet the title to or recover land, plaintiff must show that he has title.

Given, C. J., took no part.

*Appeal from Palo Alto District Court.*—HON. GEORGE H. CARR, Judge.

FRIDAY, DECEMBER 13, 1895.

*Cory & Bemis* for appellants.

*A. C. Parker* and *Richardson, Buck & Kirkpatrick* for appellees.—*Affirmed.*

Kinne, J.—I.   These three cases involve the same questions, are argued and submitted together, and will be considered and determined in one opinion.

Plaintiff Schlosser is the owner of lots 2 and 3 of section 30, township 97 north, of range 34 west, of fifth principal meridian, in Palo Alto county, Iowa.   This land lies adjacent to a lake, a body of water about two miles wide and three miles long, and being from ten to eighteen feet deep.   These lots were patented by the United States to John A. Anthony, and plaintiff's title is devised through certain mesne conveyances from said Anthony.   The patent describes the land thus: "Lots numbered two and three, of section thirty, township ninety-seven, of range thirty-four, in the district of lands subject to sale at Sioux City, Iowa, containing ninety-nine acres, and eighty hundredths of an acre, according to the official plat of the survey of lands returned to the general land office by the surveyor general."

Plaintiff Caldwell owns lots 1 and 2 in section 32, township 97 north, of range 34 west, of the fifth principal meridian.   These lots were patented in 1876 to one Perry, from whom, through several mesne conveyances, plaintiff became the owner of the lots in 1891. The description or form is like that in Schlosser's case.

Plaintiffs McNarys own lots 3 and 4 in the section, township, and range above mentioned.   These lots were patented to one Freeman in 1871, and by him, through several mesne conveyances, said plaintiffs became the owners in 1891.   The description in form is like that in *Schlosser's Case.*

All this land appears to have been surveyed by the general government in 1857. The meander line run by the government surveyors touches the shore line of the lake in one or two places only, and then so runs as to leave, in Schlosser's case, about one hundred acres of land between the said line and the actual shore line of the lake. In Caldwell's case there are twenty-six and 12-100 acres lying between the shore line of the lake and the meandered line. In McNary's case there are over thirty-four acres lying between said meandered line and the shore line of the lake. Plaintiff in each case owns the land which lies adjoining said meander line. They and their grantors have for many years occupied and used, to a greater or less extent, this land which lies adjacent to the meander line, and between it and the shore line of the lake, and so continued until about 1893, when defendants went upon the same, and occupied it as public lands of the general government, for the purpose of taking it as homesteads. Plaintiffs bring these actions for decrees establishing their ownership of the land lying between the shore line of the lake and the meandered line, and to quiet title thereto, and enjoining the defendants from entering thereon, or from cultivating the same, or in any manner interfering with the plaintiff's possession. In each case the district court entered a decree as prayed, to which defendants excepted, and they appeal.

A large part of the land involved in this controversy is high, dry, tillable land, some of it is meadow or pasture land, and some low and unfit for cultivation. The undisputed evidence is that the shore line of the lake in fact never coincided with the meander line as run by the government surveyors; that the banks of the lake are clearly defined, and in many places many feet higher than the water; that nearly all the land in dispute has never

been overflowed; and that there is every evidence that the shore line of the lake is now practically the same as it was in 1857, when all of this land was first surveyed. There is no question of accretion in these cases.

II. Plaintiffs claim that, as the official plat of the government survey returned to the government land office by the surveyor general shows that the shore line of the lake is coincident with the meandered line, they own to the water's edge; that the meander line is not a boundary line. Defendants contend that whatever may be the presumption against a meander line being a boundary line, when it is shown that, the time the survey was made, a strip of land was left between said meandered line and the shore line of the lake, then the meandered line becomes the boundary line of the adjacent owners. The question we must determine is whether the plaintiffs as owners of the land adjoining the meandered line, take title to, and are the owners of, all the land lying between said line and the shore line of the lake. This, as we understand it, is an action for the recovery of real property, and hence, to entitle plaintiffs to recover, they must show title in themselves. Code, section 3246; *Hurley v. Street*, 29 Iowa, 429; *Reed v. Wright*, 2 G. Greene, 38; *Glenn v. Jeffrey*, 75 Iowa, 20 (39 N. W. Rep. 160); *McCarty v. Rochel*, 85 Iowa, 427 (52 N. W. Rep. 361).

III. A meander line is run when a water course or other body of water is the external boundary of the adjacent land; and a line showing the place of the water course or other body of water, and its sinuosities, courses, and distances, is called a "meander line." The general rule adopted by both federal and state courts is that meander lines are not run as boundaries of the fractional tract thus surveyed, but for the purpose of defining the sinuosities of the banks

of the stream or other body of water, and as a means of ascertaining the quantity of land in such fraction subject to sale, and which is to be paid for by the purchaser. *Railroad Co. v. Schurmeier*, 7 Wall. 272; *Hardin v. Jordan*, 140 U. S. 371 (11 Sup. Ct. Rep. 808); *Boorman v. Sunnuchs*, 42 Wis. 233; *Wright v. Day*, 33 Wis. 260; *Jones v. Pettibone*, 2 Wis. 308; *Ross v. Faust*, 54 Ind. 472; *Ridgway v. Ludlow*, 58 Ind. 252; *Palmer v. Dodd*, 64 Mich. 474 (31 N. W. Rep. 209); *Weiss v. Steel Co.*, 13 Or. 496 (11 Pac. Rep. 255); *Sphung v. Morre*, 120 Ind. 352 (22 N. E. Rep. 319); *Whitney v. Lumber Co.*, 78 Wis. 240 (47 N. W. Rep. 425); *Lally v. Rossman*, 82 Wis. 147 (51 N. W. Rep. 1132); *Olson v. Huntamer*, 61 N. W. (S. D.) Rep. 481; *Butler v. Railroad.* 85 Mich. 246 (48 N. W. Rep. 569); *Kraut v. Crawford*, 18 Iowa, 549; *Musser v. Hershey*, 42 Iowa, 356; *Steele v. Sanchez*, 72 Iowa, 68 (33 N. W. Rep. 366); *Ladd v. Osborne*, 79 Iowa, 95 (44 N. W. Rep. 235); *Grant v. Hemphill*, 92 Iowa, 218 (59 N. W. Rep. 265). The rule of the cases cited from this state is that, as a meander line is not a boundary line, the owner of land adjoining such meander line takes title to the high-water mark of the stream or body of water, if navigable, lying adjacent thereto. In other words, in such cases the adjacent proprietor is a riparian owner, whose title extends to and embraces all land lying between such a meandered line and the high-water mark of a navigable stream or other body of water; and such, we may say, is the general holding. In some states it is held that the rights of such riparian owner extend further, and embrace all land lying between the meander line and the center of the stream or body of water, as the case may be. It may be well said here that the latter fact in no way weakens them as authority in favor of extending the title and dominion of the riparian owner over any land adjoining such a meander line, and

between it and the shore of the lake. It is said in
*Noyes v. Collins,* 92 Iowa, 566 (61 N. W. Rep. 250).
"It may be conceded as the rule that riparian owners
of lands bordering on rivers or streams not navigable,
in the absence of a limitation in the title, take to the
center thread of the river or stream. * * * In
this state no such rule has been applied to lakes or
ponds." And in that case it is held that such owner's
title does not extend beyond the natural shore of the
lake. For the purpose of determining the matter now
in controversy, it is not material that we discuss the
questions as to the ownership of the land under
the lake, or refer more fully to the cases relating
thereto. Unless, therefore, the facts in the case
at bar take it out from under the operation of the
rule already established in this state, these cases were
correctly decided by the district court. We proceed,
therefore, to a consideration of the cases, decided, by
this court, and which we think rule the cases at bar.

In *Kraut v. Crawford, supra,* the land was
adjacent to the Mississippi river. It was divided into
lots, and the acreage in each lot was stated. The tract
in controversy lay between the meandered line and
the river. It was bottom land, and when the water
was high it overflowed. The government plat of the
survey represented the land of the adjacent proprie-
tors as bounded upon the river. It showed no tract
between it and the river, and no such tract was
reserved. It was held that the grantee from the general
government took to the river, whether he thereby got
more or less land than was called for in his
patent. It will be seen that this case is in its
main facts like those at bar; the only marked
difference is that in the cases at bar the land is high,
and never overflowed, while in *Kraut's Case* it was
low, and subject to overflow. In *Ladd v. Osborne,*
*supra,* plaintiff's land was bounded by a meandered

body of water, called "Goose Lake." It appears that
the government plat and field notes showed no reser-
vation of land between the meandered line and the
lake. Some of the evidence tended to show that the
corner of plaintiff's land was established some
distance from the shore of the lake, and that the
meandered line started from such corner. There was
other evidence contradicting this. It was held that
plaintiff was a riparian owner, and, as such, his land
extended to the lake. The facts of that case differ
from those in the cases at bar, in that in these cases
there is no conflict in the evidence touching the actual
location of the meandered line. In these cases it is
clearly established that the meandered line never
was coincident with the lake. Nor does it appear in
*Ladd's Case* as to whether the land claimed by the
defendant was in the same condition when the
meander line was run as afterwards, as to being high,
dry land, and not subject to overflow. In *Grant v.
Hemphill, supra,* a meandered line had been run, but
there was no adjacent body of water upon which to
base such a line, nor had there ever been such a body
of water. In speaking of a meandered line in *Grant v.
Hemphill, supra,* this court said: "In such cases, and
where it appears that the government intended to sell
all the land, to the river or body of water, the riparian
owner is entitled to all the land adjacent to his grant,
to the water's edge." In these cases there was
a body of water to meander. There was a
meander line run, which appears on the plat of
the government survey as coincident with the line of
the lake. The plat does not show any reservation, or
attempted reservation, of the land in controversy in
these cases, or any of it. It would appear, then, that
the government intended, when it patented the lands,
to convey to the purchaser the land to the lake, not
merely to the meandered line. *Gould, Waters,* section

203; *Hardin v. Jordan,* 140 U. S. 371 (11 Sup. Ct. Rep. 808, 838); Id. 16 Fed. Rep. 823; *Packer v. Bird,* 137 U. S. 661 (11 Sup. Ct. Rep. 210), and cases heretofore cited.

Appellants urge, however, that, in cases like those at bar, the presumption that the government intended to convey beyond the meandered line, and to the lake, is not conclusive; that it may be overcome by evidence showing a contrary intent. This may be conceded, and still we do not think defendants have shown facts which should be held to overcome such presumption. It cannot be said that evidence which merely shows that the meandered line was not, when the government survey was made, coincident with the line of the lake, and that there was then a body of land lying between such line and the high-water mark of the lake, will overcome the presumption. To overcome such presumption would require some evidence to show that the grantor, the general government, had done, or attempted to do, some act inconsistent with the presumption; such as having previously surveyed the land in dispute as government land, or conveyed it to others than plaintiffs' remote grantors, or was in some manner making a claim to the disputed ground. Not an act is shown on part of the general government inconsistent with the claim and presumption that this land in controversy was intended to and did pass by its patents to the remote grantors of plaintiffs. The general rule, applicable also to the federal government, is that all grants are to be construed most strictly against the grantors, and reservations will not be implied. *Butler v. Railroad Co.,* 85 Mich. 246 (48 N. W. Rep. 569), and cases cited. *Chandos v. Mack,* 77 Wis. 573 (46 N. W. Rep. 803); *Middleton v. Pritchard,* 3 Scam. 510. Indeed, it is doubted in such a case if the government could by a survey of such disputed land, made after a

patent had been granted of the adjoining land, deprive the adjoining proprietor of land between the meandered line and the high-water mark of the lake. *Hardin v. Jordan, Chandos v. Mack,* and *Butler v. Railroad Co., supra.*

IV. Appellants claim that as the patent from the government stated the number of acres of land purporting to be conveyed, and as it corresponds with the acreage within the meander line and the subdivisional lines of the surveyed tract, plaintiffs have all the land which their remote grantors got from the government, and the land in dispute does not belong to them. The statement of the number of acres in these patents in no way limits the extent of the grant. To so hold would, in effect, be holding that a meandered line was a boundary line, which, as we have seen, is not the case. The riparian holder of the patent takes all the land to the shore of the lake, though he may thereby obtain a larger acreage than his patent calls for.

V. It is also claimed that the question as to whether the meandered line in fact follows the sinuosities of the lake is one of fact, to be determined in each case from the evidence; and, if it does not follow the lake, then the land lying between it and the lake is not embraced within the grant. In support of this claim, the following among other cases are cited: *Lammers v. Nissen,* 4 Neb. 245; *Bissell v. Fletcher,* 19 Neb. 725 (28 N. W. Rep. 303); *Newman v. Foster,* 24 Am. Dec. 100; *Bigelow v. Hoover,* 85 Iowa, 162 (52 N. W. Rep. 124); *Glenn v. Jeffrey,* 75 Iowa, 20 (39 N. W. Rep. 160). We cannot give special consideration to every case cited, but an investigation of some of them must suffice. In *Lammer's Case* and *Bissell's Case* substantially the same facts were said to be involved, and the latter case expressly follows the holding in the former. In *Lammer's Case* a patent

was issued in 1861 for a tract of land bordering upon the Missouri river. The land in dispute was claimed as an accretion, but in fact was not such. The meandered line as run did not touch the river, but was along the banks of an ancient slough. At the time of the survey, between this slough thus meandered and the river, was a tract of one thousand acres left unsurveyed. The case appears to hold that, while the plat showed the meandered line to run along the river, evidence *aliunde* could be introduced to show that it was not the river which was in fact meandered, but the slough. If we are right in our view of the case, it is more like *Jeffrey's Case* than it is like the cases at bar. It is said by counsel for appellant that this case has been affirmed by the supreme court of the United States, but a diligent search fails to so show. If the opinion can be said to hold the broad doctrine that in all such cases the question as to whether the meander line is or is not a boundary line is a subject for evidence *aliunde,* in the absence of anything to show a reservation of the disputed ground by the general government, it is in conflict with the great weight of authority, and is, we think, wrong in principle. *Newman's Case* is not in 34 Am. Dec. *Bigelow's Case* was an action to quiet the title in plaintiff to "Hoover's Island," under a claim only that "the same was an accretion to his lots." Defendants admitted plaintiff's ownership of the lots, but denied that the land in controversy was any part of them, or an accretion thereto, and alleged that the island belonged to the general government, and defendants were occupying it preparatory to perfecting a title thereto under the homestead laws. The district court found "that the accretions in question are adjacent to said island, to plaintiff's lots, and to other property," and decreed a division of the accretions between said lots and the island. In the opinion this court

said: "The inquiry is simply whether the plaintiff has title, or, in other words, whether what is now known as 'Hoover's Island,' or any part thereof, is a part of the plaintiff's lots, by reason of being accretion thereto." It appears that the island is entirely surrounded by the waters of Brown Lake, and separate from all other land except plaintiff's lots, which adjoin the neck or narrow point on the east and west sides thereof. Portions of this island are low; other portions of it consist of high land, fit for cultivation. The plat and government survey do not show any island, but mark the place where it now is as "Bayou." It also appears that the island was there when the government survey was made. We do not think, when carefully considered, that the facts in that case are such as to make it an authority in support of defendant's contention. It involved simply the question of an accretion. No claim was made by plaintiff to ownership of it by virtue of his line originally extending as a riparian owner so as to embrace the disputed tract, and no such question was determined in the case. Indeed, it does not appear whether any meander line was run by the government surveyor, or, if so, whether or not it was coincident with the shore of the bayou. *Glenn's Case* was one where the government surveyors, in making a survey, meandered a bayou, which it would seem they supposed was in fact the Missouri river. This bayou was a body of water which furnished a natural boundary, and it was this body of water which in fact was meandered, and not the river. Plaintiff took to the body of water in fact meandered, —that is, the bayou,—not to the body of water which lay beyond it. Beyond this bayou (which was in fact meandered) lay the land in controversy, which had not been meandered at all, and it was held that plaintiff had no title to this land. The facts are so unlike those in the cases before us as to require no extended

consideration. These cases do not involve the meandering of one body of water supposing it was another, which was in fact separated from the former by a tract of land. On the contrary, the lake was the body of water meandered.

VI. Counsel, with much elaboration, argue the question as to who owns the land under a meandered body of water in this state. We have no such question to deal with. So far as the determination of this case is concerned, it is wholly immaterial who owns the land lying under the water of the lake. We are only concerned with the question as to who is the owner of the tract of land lying between the meander line of the lake and the high-water mark of the lake.

Counsel urge that plaintiffs are not riparian owners. It is said in *Grant v. Hemphill, supra:* "A riparian owner is one who owns land bounded upon a water course or lake." We hold plaintiffs are riparian owners; that, under the law, they take title to the shore of the lake.

In the determination of these cases, we have borne in mind the fact that in *Schlosser's Case* the meandered line at no place touched the high water mark of the lake, and that in some other respects the facts are slightly different from those relating to the other two cases. These differences, however, are not material, and the same rules must govern in the determination of all three cases. Plaintiffs are riparian owners, and, as such, they take title to all of the land lying between the meandered line and the high-water mark of the lake.

We have possibly devoted more time to these cases than we should. We have felt, however, that the questions presented were important, and that their determination would likely dispose of many similar contentions in this state. Our conclusion has been

reached after a thorough examination of the authorities cited by counsel, as well as many others. The decree of the district court in each case is *affirmed*.

Given, C. J., took no part.