GEORGE SCHLOSSER v. W. L. HEMPHILL, RICHARD RYAN, *et al*, Appellants.

Action to Quiet Title: MEANDER LINE: WHEN A BOUNDARY. Where
1  a body of water is meandered, such lines are not boundary lines, and the adjacent owner will usually take title to the actual shore, but where there is no adjacent body of water proper to be meandered, such line becomes a boundary and a purchaser from the government cannot claim title beyond it.

Same: WHAT BODIES OF WATER TO BE MEANDERED: EVIDENCE.
2  Evidence considered and no permanent body of water is found, the shore of which constitutes a boundary line of plaintiff's land.

Title to Swamp Land: ADVERSE POSSESSION: ACT OF CONGRESS, 1850.
3    The Act of Congress of 1850 granting swamp and overflowed
     lands to the state passed an inchoate title in *presenti*, to such
     lands as had been surveyed and platted, but the legal title re-
     mained in the United States until patent issued.

Same:    STATUTE OF LIMITATIONS:    ADVERSE POSSESSION.    The Act
4    referred to passed no title to unsurveyed swamp land and the
     statute of limitations would not run in favor of one claiming
     title by adverse possession.

*Appeal from Palo Alto District Court.*—HON. W. B. QUAR-
TON, Judge.

* TUESDAY, JUNE 3, 1902.

THIS is an action in equity to quiet title to a tract of
some 290 acres of land in the S. ½ of section 30, township
97, range 34, in Palo Alto county. Plaintiff is the admit-
ted owner of lots two and three, forming a part of said
tract, and containing about 99 acres. According to
the original government survey, made in 1857 this land,
was adjacent to a lake, which was meandered, and the
meander lines were run along the north side of the said
two lots. The remainder of the land claimed lies between
this meander line and the alleged shore of the lake, and is
the subject of the controversy. The half section in ques-
tion—that is, such part of it as lies beyond the original
meander line—was resurveyed by the government in the
year 1898, and platted into five lots, of which lots 11, 14,
and 16 are claimed by defendant Hemphill, and lots 12 and
13 by defendant Ryan. These claims are founded upon
conveyances from Palo Alto county, under a patent issued
to the state, under the swamp land grant of 1850, and
which is based upon the resurvey of 1898. Schlosser in-
sists that the meander line is not his boundary, it not
marking the edge of the lake, but that he is entitled to

[*NOTE—This opinion is published out of its chronological order, owing to motion
for rehearing.—REPORTER.]

claim up to the east and west half section line of said
section.   There was a decree for plaintiff, and defendants
appeal.—*Reversed.*

*E. B. Evans* and *Morling & Davison* for appellants.

*Buck & Kirkpatrick* and *Carr & Parker* for appellee.

WATERMAN, J.—Lots two and three, which plaintiff
admittedly owns, are bounded on the south by the south
section line, and they extend almost across said section
from east to west.   Plaintiff's claim was once
before presented to this court in an action of
a similar nature to this, but against a differ-
ent defendant.   See *Schlosser v. Cruickshank,* 96 Iowa,
414.   Plaintiff was then successful.   But that was before
the resurvey and issuance of a patent and the making of
conveyance by the county; and, more than this, in the
other case Schlosser claimed title only to the actual margin
of the alleged lake, while here he claims to the half sec-
tion line, which was first run through this section by the
resurvey of 1898.   It is undisputed that the meander line
did not correctly indicate the shore line of the lake as it
was originally run.   In the former case we found on the
evidence then before us that there was a tract of about
one hundred acres between said line and the actual shore
of the lake.   When a body of water is meandered, such
lines are not run as boundaries, but merely for the pur-
pose of defining the sinuosities of the shore, and as a means
of ascertaining the quantity of land to be paid for by the
purchaser.   *Schlosser v. Cruickshank, supra,* and author-
ities therein cited.   In such a case, if the meander line
does not coincide with the bank of the lake, but is so run
that land lies outside, and between it and the shore, the
adjoining owner will usually take title to the actual shore
line; and it may doubtless be properly conceded that no
subsequent resurvey by the government, in the absence of

*1. MEANDER
line: when
a boundary.*

fraud or error so gross as to be in the nature of a fraud in the original survey, could affect his title thereto. *Mitchell v. Smale*, 140 U. S. 406 (11 Sup. Ct. Rep. 819, 840, 35 L. Ed. 442). But, where there is no adjacent body of water proper to be meandered, the rule we have mentioned will not apply. In such a case the meander line will be a boundary line, and one who purchases from the government according thereto cannot claim title beyond it. *Grant v. Hemphill*, 92 Iowa, 218; *Live Stock Co. v. Springer*, 22 Sup. Ct. Rep. 563 (46 L. Ed. —.)

We have, then, to determine whether there was a body of water in section 30 proper to be meandered. As to what bodies of water should be meandered, see Lester

2. WHAT bodies of water to be meandered: evidence.
Land Law (Ed. 1860) 714. We do not intend setting out the testimony on this point. It is quite voluminous and very conflicting. From a careful reading of it we reach the conclusion there was no such body of water. That there was swampy and low land in section thirty north of plaintiff's lots admits of no question, and in wet seasons, doubtless, a large part of it was covered at times with water; but we are equally clear that no permanent body of water of any considerable extent existed there. The lake spoken of in *Schlosser v. Cruickshank* as being about two miles wide, three miles long, ten to eighteen feet deep, and adjacent to this land, is evidently Lost Island Lake, which lies south of section thirty and no where touches it. The meandered lake which gives rise to this controversy is called Mud Lake, and, as must be manifest from what we have said, lies north of plaintiff's land. How far, if at all, this mistake affected the conclusion in the *Cruickshank Case*, we are not able to say; but that it was an error is clear from the fact that neither witnesses nor counsel for plaintiff claim Mud Lake to answer at all to the description so given. The confusion seems to have arisen from the fact that the *Cruickshank Case* was submitted in connection with another

case involving similar questions (*Caldwell v. Jackson*, 96 Iowa, 414), but which related to land bordering upon Lost Island Lake, and the arguments were made in the latter case. The case of *Grant v. Hemphill*, to which we have alluded above, involved Mud Lake, as alleged, on section nineteen, which of course adjoins section thirty on the north; and the evidence in that case, in which it was found no lake existed adjacent to the land of the plaintiff in that action, seems to have been quite similar to what is relied on here in support of *Schlosser's Case.*

We are confirmed in our conclusion by plaintiff's present claim. He does not seek to extend his north line to the shore of a lake, but to the half section line, which did not appear on the original plat; for, with the exception of a very small tract in the northwest corner of the section, the lake was shown to cover that whole subdivision outside of plaintiff's two lots. The half section line certainly does not mark the shore line of any body of water at present or heretofore existing. If we were able to find now, as was done in the former action brought by this plaintiff, that a tract of land lay north of and between the meander line and an existing permanent lake proper to have been meandered, we might, perhaps, reach a conclusion on the facts in harmony with our former opinion; but the evidence before us precludes this. The south shore of the body of water, such as it was, is far south of the half section line according to all the testimony. Beyond this shore or margin, plaintiff's title could not extend, if that body of water was a permanent lake. *Rood v. Wallace*, 109 Iowa, 5; *Noyes v. Board*, 104 Iowa, 174.

The fact that plaintiff claims beyond the shore line, when taken in connection with the testimony going to show that the greater part of such body of water was but temporary in character, is sufficient to convince us that no meander line should ever have been run here. Plaintiff's present claim, and the facts and arguments in its support,

tend to clear the half section in question of any lake, and, indeed, to remove such permanent body of water wholly from the map. We are further inclined to believe that when the meander line deviates so far from the true shore as it does in this case from the bank of the body of water attempted to be bounded according to all the evidence and the concessions of counsel, the error would be so gross as to warrant a resurvey. *Cragin v. Powell*, 128 U. S. 691 (9 Sup. Ct. Rep. 203, 32 L. Ed. 566); *Lumber Co. v. Rust*, 168 U. S. 589 (18 Sup. Ct. Rep. 208, 42 L. Ed. 591); *Niles v. Cedar Point Club*, 175 U. S. 300 (20 Sup. Ct. Rep. 124, 44 L. Ed. 171). While it is true the significant question before us is the condition that existed when the original survey was made, and that attempts to show this must usually involve much uncertainty, because of the great changes that lapse of time and cultivation of surrounding lands have made in the wet lands and inland waters, yet it appears beyond question here that the meander line was not correctly run in the first instance, and we think it is satisfactorily disclosed that no body of water necessary to be meandered then existed where Mud Lake is shown on the plat to be.

II. Plaintiff rests his claim of title also upon adverse possession. It is said he and his grantors have been in possession of the disputed tract, claiming title thereto, for much more than ten years prior to the beginning of this action; that the swamp land act of 1850 was a grant in *præsenti*; and that the statute of limitations will run against a county. The grant of swamp lands which had been surveyed and platted was in *præsenti*, and, it has been said, passed title to the state, and from the state such title passed to the counties by the act of the general assembly of 1853. *Smith v. Miller*, 105 Iowa, 688; *Bailey v. Callanan*, 87 Iowa, 107; *Emigrant Co. v. Fuller*, 83 Iowa, 599. But it was an inchoate title only that passed under the act to the

3. TITLE to swamp land: adverse possession: act of congress 1850.

state. The legal title remained in the United States until a patent was issued. *Ogden v. Buckley*, 116 Iowa, 352; *Rogers Locomotive Mach. Works v. American Emigrant Co.*, 164 U. S. 559 (17 Sup. Ct. Rep. 188, 41 L. Ed. 552); *Lumber Co. v. Rust, supra.* Furthermore, the swamp land act did not operate to convey any interest in lands unsurveyed at the date of its passage. A survey into legal subdivisions is a necessary prerequisite to the passing of title from the government. *Boynton v. Miller*, 22 Iowa, 579. So long as title remained in the United States, the statute of limitations would not run. *Durham v. Hussman*, 88 Iowa, 29; 1 Am. & Eng. Enc. Law, 875, and cases there collected. This land was not surveyed until the year 1898. Before it was laid out into legal subdivisions, neither state nor county could make a selection or assert any title to it. See, further, on this point, *Land Co. v. Adkins*, 38 Iowa, 351; *Railway Co. v. Allfree*, 64 Iowa, 500.

In our opinion, the plaintiff has no right to any other than the land patented to his grantor, and the decree of the trial court must therefore be REVERSED.